No. 55453.—B. Solomon v. United States, protest 125129–K (New York).

MOLLISON, Judge: This protest is directed against the action of the collector of customs in refusing to allow drawback under the provisions of section 313 of the Tariff Act of 1930 (19 U. S. C. § 1313) upon the exportation of certain shower-proofed rayon piece goods manufactured or produced in the United States with the use of imported merchandise. The ground of refusal is stated to be that the merchandise was not exported within the 3-year limitation after importation of the imported merchandise contained in subsection (h) of section 313, supra.

The pertinent portions of the statute read as follows:

SEC. 313. DRAWBACK AND REFUNDS.

(a) ARTICLES MADE FROM IMPORTED MERCHANDISE.—Upon the exportation of articles manufactured or produced in the United States with the use of imported merchandise, the full amount of the duties paid upon the merchandise so used shall be refunded as drawback, less 1 per centum of such duties,  *  *  *.

*       *       *       *       *       * .       *

(h) TIME LIMITATION ON EXPORTATION.—No drawback shall be allowed under the provisions of this section  *  *  *  unless the completed article is exported,  *  *  *  within three years after importation of the imported merchandise.

The record before us consists of an oral stipulation of counsel, copies of certain correspondence had by and between the plaintiff, the collector of customs at the port of New York, and the Bureau of Customs at Washington, D. C., and the entire official file of papers transmitted to the court by the collector in connection with the entry. There is no dispute as to any of the facts, which are as follows:

The material used in the manufacture or production of the exported merchandise was imported on March 27, 1942, and entered on April 7, 1942. The material was thereafter showerproofed, and a notice of intent to export the showerproofed articles with benefit of drawback was filed on December 7, 1944, naming as the exporting vessel the S. S. Governor John Lind. The merchandise was inspected, corded, and sealed by the drawback examiner of the collector's office at the exporter's premises on December 11, 1944. Before delivery of the shipment to the pier, sailing of the S. S. Governor John Lind was cancelled by the War Shipping

Administration verbally on December 9, 1944; and in writing on December 11, 1944, and another vessel on which to ship the merchandise was not available until February 23, 1945. A notice of diversion to the S. S. *Eureka*, the first available ship, was timely filed on February 24, 1945, and the merchandise was delivered to the pier of the S. S. *Eureka* on February 27, 1945, with cords and seals intact. It was laden on the S. S. *Eureka* under customs supervision on March 6, 1945.

On March 8, 1945, a fire broke out on the S. S. *Eureka* and the vessel was ordered away from the dock and out into the stream by the local fire department. On March 13, 1945, it was brought to another dock for discharge of the cargo before reconditioning, but the merchandise here in issue remained on board the vessel at all times until it eventually sailed on May 1, 1945, some 3 years and 34 days after importation of the merchandise, the duties paid on which, less 1 per centum, are here sought to be refunded as drawback.

It was stipulated that all of the applicable customs regulations were complied with, and the sole ground for disallowance of drawback was failure of compliance with section 313 (h), *supra*.

On the part of the plaintiff it is contended (1) that the act of the War Shipping Administration, an agency of the United States, in cancelling the sailing of the S. S. *Governor John Lind* and depriving the plaintiff of an exporting vessel for a a period of more than 2 months until the availability of the S. S. *Eureka* tolled the running of the statutory time limitation for such period, and that the 3-year limitation did not actually expire until after the sailing of the S. S. *Eureka*, or (2) in any event, that the lading of the merchandise on the S. S. *Eureka* before the expiration of the 3-year limitation and its passage out of the custody and control of the plaintiff constituted an exportation within the meaning of the statute.

Although conceding that events beyond the control of the plaintiff prevented the exportation of the involved merchandise within the statutory time limitation, and that the failure to allow drawback herein operates as a hardship upon the plaintiff, the defendant contends that the provisions of section 313 (h) are mandatory in character and preclude recovery of drawback on the facts of this case.

Plaintiff has cited no statutory, judicial, or other legal authority to sustain his contention that during the period between the cancelling by the War Shipping Administration of the sailing of the S. S. *Governor John Lind* and the availability of the S. S. *Eureka* the statutory time limitation for exportation was tolled as to this merchandise. We are of the opinion that under the particular facts of this case the risks and results of the cancellation of the sailing of that vessel must be borne by the plaintiff.

While it is true that the failure to export was not the fault of the plaintiff, neither was it the fault of the defendant or its officers or agents. We are unable to find for the plaintiff on the ground stated.

With respect to the alternative contention of the plaintiff, i. e., that the lading of the merchandise aboard the S. S. *Eureka* before the expiration of the 3-year limitation and its passage out of the custody and control of the plaintiff constituted an exportation within the meaning of the statute, it would appear that the leading case on the meaning of the term "export" is to the effect that to constitute an exportation within the meaning of the tariff laws (except where specific provision is made, e. g., section 309 (b) of the Tariff Act of 1930, *infra*), there must be not only the intent to export but also the execution thereof so that the exported merchandise must be physically transported out of the country. *Swan & Finch Co.* v. *United States*, 190 U. S. 143, 47 Law. ed. 984. See also *The National Sugar Refining Company* v. *United States*, 26 Cust. Ct. 97, C. D. 1307.

It is true that in certain cases, notably in section 309 (b), as amended, of the Tariff Act of 1930, Congress has provided that articles subject to drawback which are "laden as supplies" upon certain vessels or aircraft "shall be considered to be

exported within the meaning of the drawback provisions of this Act," but the very expression of that treatment denotes it an exception to the rule which obtains otherwise in connection with the drawback provisions of the act.

We agree with counsel that the instant case presents a hardship, but we are unable under the law as it now exists to afford relief to the plaintiff. Judgment will therefore issue overruling the protest accordingly.

### DISSENTING OPINION

COLE, Judge: *The National Sugar Refining Company* v. *United States* (protests 148657–K, etc.), decided on March 6, 1951, by the first division and in which I participated, fixed two essential elements in determining whether conditions of the drawback statute had been fulfilled: (1) Severance of goods from the mass of things belonging to this country and (2) an intention of uniting them with the mass of things belonging to some foreign country.

Reaching its conclusion therein, and granting drawback on merchandise damaged at sea and returned to New York where it was sold for the benefit of the insurers, the court said:

We are of the opinion that both logic and the weight of authority indicate that goods may be said to be exported, at least so far as the drawback statute is concerned, when physical carriage out of the country with the intention to unite them with the goods of a foreign country has taken place, so that subsequent events which may cause a return to this country before the intention is carried out do not affect the character of the act as an exportation.

The cited case supplies abundant authority for granting the claim for drawback herein. It is not clear to me how the majority intend to distinguish the two cases. I presume it is because in *The National Sugar Refining Company* case, *supra*, the shipment, carrying the merchandise, left the dock and was (to use the language of the majority) "physically transported out of the country," while in this case, as the majority write—

\* \* \* The merchandise was inspected, corded, and sealed by the drawback examiner of the collector's office at the exporter's premises on December 11, 1944. Before delivery of the shipment to the pier, sailing of the S. S. *Governor John Lind* was cancelled by the War Shipping Administration verbally on December 9, 1944, and in writing on December 11, 1944, and another vessel on which to ship the merchandise was not available until February 23, 1945. A notice of diversion to the S. S. *Eureka*, the first available ship, was timely filed on February 24, 1945, and the merchandise was delivered to the pier of the S. S. *Eureka* on February 27, 1945, with cords and seals intact. It was laden on the S. S. *Eureka* under customs supervision on March 6, 1945.

On March 8, 1945, a fire broke out on the S. S. *Eureka* and the vessel was ordered away from the dock and out into the stream by the local fire department. On March 13, 1945, it was brought to another dock for discharge of the cargo before reconditioning, but the merchandise here in issue remained on board the vessel at all times until it eventually sailed on May 1, 1945, some 3 years and 34 days after importation of the merchandise, the duties paid on which, less 1 per centum, are here sought to be refunded as drawback.

and therefore it cannot be said herein that the merchandise had been "physically transported."

To draw such a distinction seems to me to be a mere play on words, and reflects such a failure to recognize the clear intent and purpose of the law controlling this transaction, that I cannot accept it.

Plaintiff seems to have done everything the law required of him. It would be a harsh rule indeed if, under circumstances disclosed in this record, plaintiff would be denied relief while reaching the directly opposite conclusion in *The National Sugar Refining Company* case, *supra*, wherein facts favorable to the plaintiff were far less persuasive than those now before us.

For the foregoing reasons and others which will serve no useful purpose to enlarge upon, I respectfully dissent from the views expressed by the majority.

The protest should be sustained.