## Case No. 8,803.

### McGLINCHY v. UNITED STATES.

### [4 Cliff. 312.] [1]

Circuit Court, D. Maine. Sept. Term. 1875.

CUSTOMS DUTIES—DOMESTIC GOODS BROUGHT BACK — CUSTOM-HOUSE DOCUMENTS — PLEADING — LEAVE TO AMEND — ESTOPPEL — LIMITATION OF ACTIONS—STATE STATUTE.

1. Where goods were withdrawn from a United States bonded warehouse, to avoid the payment of the internal revenue tax thereon, exported from a domestic port, carried beyond the jurisdiction of the United States, and then brought back into a domestic port, they are imported goods, although not actually landed in any foreign port or place.

---

[1] [Reported by William Henry Clifford, Esq., and here reprinted by permission.]

2. Applications for leave to amend are generally addressed to the discretion of the court, and the ruling thereon is not generally the subject of exception or a writ of error.

3. Documents from the custom-house to prove the withdrawal of goods from a bonded warehouse, and their exportation in a certain vessel, are prima facie sufficient to sustain an allegation in the declaration that such things were done with the goods.

4. Some of the goods removed from the bonded warehouse, and then brought back, were seized by the United States as goods unlawfully imported in a certain ship or vessel without having a manifest on board. Held, the record of that proceeding, when offered in evidence, was not an estoppel to the right of the plaintiffs to recover in this case.

5. A state statute of limitations cannot have the effect to bar a right of action on the part of the United States secured to it by act of congress.

6. After suit brought, the time fixed by the statute of limitations for an action to be brought in, expired, and certain amendments were made to the writ after the time limited in the statute. Held, that this did not bar the right of action by the plaintiffs, where no new cause of action was introduced by the amendments.

[In error to the district court of the United States for the district of Maine.]

This was an action of debt by the United States, to recover penalties and duties for certain goods unlawfully imported into the United States, and bought by the defendant [James McGlinchy], knowing that the same were so imported. The case was tried in the district court, and a verdict rendered for the plaintiffs. [Case unreported.] Exceptions were taken, and a writ of error was sued out, and the cause removed to this court.

Nathan Webb, U. S. Dist. Atty.

W. L. Putnam, for defendant.

Before CLIFFORD, Circuit Justice, and FOX, District Judge.

CLIFFORD, Circuit Justice. Persons who receive, conceal, or buy goods, wares, or merchandise, knowing the same to have been illegally imported, if the goods are liable to seizure by virtue of any act in relation to the revenue, shall, on conviction thereof, forfeit and pay a sum double the amount or value of the goods so received, concealed, or purchased. 3 Stat. 781. Distilled spirits were, by section 14 of the act of March 2, 1867, made subject to a tax of $2 upon every proof gallon, to be paid by the distiller, owner, or any person having possession thereof, and the same section makes the tax a lien upon the spirits distilled, and upon the stills, &c., and on the lot or tract of land whereon the distillery is situated. 14 Stat. 480. Goods once exported, of the growth, product or manufacture of the United States, upon which no internal revenue tax has been assessed or paid, are made subject to a duty equal to the tax imposed by the internal revenue laws upon such articles, whenever the same are reimported into the United States. Id. 330, § 12. Warehouses are provided by law for the safe-keeping of distilled spirits, and the

provision is that such distilled spirits may be stored in such warehouses, without the payment of the internal revenue tax, upon the terms and conditions specified in the act of congress. Id. 155. Provision is also made that such goods so stored may, in certain cases, be withdrawn for exportation without the payment of any such internal revenue tax; but it is expressly enacted that if the goods are subsequently reimported. they shall pay a duty equal to the tax imposed by the internal revenue laws. Id. 330. Pursuant to the provision authorizing distilled liquors to be warehoused, ninety-eight barrels of such spirits, of the product and manufacture of the United States, and subject to the said internal revenue tax, were deposited in a bonded warehouse without having paid the internal revenue tax; and the charge is, that the spirits so deposited were subsequently withdrawn for exportation without the payment of the internal revenue tax, and that the barrels containing the spirits were laden on board the schooner Adele, at Boston, in the district of Massachusetts, and that the same were duly exported from that port for St. Pierre, Miquelon, which is a foreign port or place, and that the schooner, with the spirits on board, regularly cleared from the port of Boston, and sailed from said port, with the spirits on board, for the said foreign port or place. Nothing irregular is imputed in those proceedings; but the complaint is that the said spirits were afterwards clandestinely imported into the port of Portland, without having paid or secured the payment of the internal revenue tax to which the same were subject, with intent to defraud the revenue of the United States, inasmuch as they were secretly and clandestinely landed in the night-time, without the permission of any authorized officer of the customs, whereby the said spirits became liable to seizure by virtue of the laws in relation to the revenue; and the charge against the defendant is, that he did receive, conceal, and buy the said spirits, then and there well knowing that the same had then and there been clandestinely and illegally imported as aforesaid, with the design to defraud the revenue, without paying or securing the payment of the internal revenue tax to which the spirits were subject. Service was made, and the defendant appeared and pleaded that he did not owe the plaintiffs in manner and form as they had alleged in their writ and declaration. Issue was joined upon that plea, and the defendant also filed three special defences: 1. That the action is barred by the statute of limitations of the United States. 2. That the action is barred by the statute of limitations of the state. 3. That the plaintiffs are estopped from maintaining the action by the record and judgment in the case of U. S. v. Twenty-one Barrels of Whiskey [Case No. 16,568], previously tried in the district court, which goods were part of those seized in this case as hereinafter referred to.

Subsequently the parties went to trial, and the verdict and judgment were for the plaintiffs. Exceptions were taken by the defendant, and he sued out a writ of error and removed the cause into this court for revision. Testimony was introduced by the plaintiffs, showing that one Stanwood and De Long, who pretended to own one hundred barrels of whiskey of domestic manufacture, and which were then in a bonded warehouse, agreed together to withdraw the same from the warehouse for exportation. and to reland the same within the United States, without paying the internal revenue tax; and that they, in pursuance of that agreement, withdrew from the bonded warehouse ninety-eight barrels of the whiskey so deposited there, without the payment of the said tax or duty, and that those identical barrels, with their contents, were laden on board the schooner Adele, bound from Boston to St. Pierre, Miquelon, being a foreign port or place near the island of Newfoundland, and that the said schooner cleared from that port, and actually sailed from the port of Boston on that voyage, with the said barrels of whiskey on board. None of these allegations are much controverted, and the further charge is, that the schooner, instead of going to the port of St. Pierre, came to Long Island, in Casco Bay, and that she there discharged the barrels containing the whiskey, in the night-time, without any permit, leaving part of the barrels there, and the residue on Portland pier.

Evidence was also introduced by the plaintiffs that Stanwood sold and delivered twenty-three barrels of the whiskey to the defendant, and that the defendant paid the seller for the same, well knowing the whole transaction, as more fully set forth in the declaration and the bill of exceptions. Satisfactory proof was also introduced by the plaintiffs, that the defendant subsequently purchased of the same party twenty-seven barrels more of the said whiskey, and that when he purchased and received the same he well knew that the barrels of whiskey so purchased were part and parcel of the said quantity illegally landed as aforesaid in the night-time, without permit. Seasonable objection was taken by the defendant to the introduction of the evidence of the landing of the barrels of whiskey, on the ground that the whiskey was not shown to have been in any foreign port or place, and that such landing was not an importation within the meaning of the acts of congress; but the court overruled the objection, and the defendant excepted, which is the first error assigned by the present plaintiff.

Objection was also taken by the defendant to the admissibility of the evidence, because the declaration, at that stage of the trial, contained only one count; but leave was asked by the plaintiffs, and was granted by the court, to add the two additional counts shown in the bill of exceptions, and the defendant

excepted to the ruling of the court allowing those amendments, which is the second error assigned by the defendant. Certified copies of the withdrawal and exportation entry, with all the certificates on the same, were also offered in evidence by the plaintiffs, to the admission of which the defendant also objected, because no rules nor regulations relative to the withdrawal of merchandise for exportation from bonded warehouses had been proved or read in evidence, and because it had not been proved that the whiskey had been lawfully deposited in a bonded warehouse, or even been in a condition to be withdrawn for exportation; but the court overruled the exception and admitted the evidence, and the defendant excepted, which is the third error he, as plaintiff in error, assigned in this case. Duly authenticated copies of the manifest of the owner, and of the outward foreign manifest, were also offered in evidence by the plaintiffs, to the admission of which the defendant objected; but the court overruled the objection and admitted the evidence, and the defendant excepted, which is the fourth error assigned.

Part of the whiskey delivered in Portland was afterwards seized on due process under the laws of the United States, and was condemned and forfeited; and the defendant offered the record of that proceeding in evidence, and contended that the record estopped the plaintiffs from maintaining the action as set out in his brief statement, but the court ruled otherwise, and instructed the jury that the said record is of no effect as an estoppel in the suit, to which instruction the defendant then and there excepted, which is the fifth error assigned. Widely different views were entertained by the defendant from those assumed by the plaintiffs, and he insisted that, inasmuch as the evidence did not show that the barrels of whiskey had ever been transported to, nor unladen in, a foreign port or place, the facts proved did not show that the same had been illegally imported into the United States, even admitting that the whole theory of fact assumed by the plaintiffs is otherwise correct, and he accordingly requested the court to instruct the jury that there is no evidence that the whiskey was illegally imported into the United States, within the meaning of the act of congress upon that subject. 3 Stat. 782. He also requested the court to instruct the jury that it is incumbent upon the plaintiffs to show that a proper exportation bond was given, and that a regular permit was obtained, before it can be held that merchandise is exported; and that, the plaintiffs not having proved that any such bond or permit was given or obtained, the action, in this case, cannot be maintained; but the court denied both requests, and instructed the jury that the documents from the custom-house, and the parol evidence introduced, if believed, made out a prima facie

case that the whiskey had been in a bonded warehouse, and that it was withdrawn for exportation without further proof that an exportation bond and a permit were given or obtained; and that if so withdrawn and transported from the port of Boston in the district of Massachusetts, under a regular clearance for St. Pierre, and the same was conveyed in the schooner directly to Portland, upon the high seas, out of the jurisdiction of the United States, such distilled spirits, on being brought back into Portland, and there landed, became liable to a duty equal to the internal revenue tax unpaid upon the spirits, and, being so liable to duty were illegally imported, if the duty was unpaid; and that the defendant is liable for the double value of the whiskey, if he received, concealed, or bought the same, knowing it to have been illegally imported and liable to seizure, as charged in the declaration. Due exception was taken by the defendant both to the refusal of the court to instruct the jury as requested, and to the instructions given, and those exceptions constitute the sixth error assigned in the record. Evidently the first and sixth errors assigned present substantially the same question, which is, whether such goods exported from a domestic port, even if subsequently brought back and landed in the United States can be regarded for any purpose as imported goods, unless it appears that, subsequently to their exportation, they were actually landed in some foreign port or place.

Cases may arise in which the theory assumed by the defendant would perhaps be correct, as where the vessel containing the exported goods was obliged to put back for repairs in consequence of the unseaworthiness of the vessel, or where she was compelled to return by the death or dangerous sickness of the officers or seamen, or by war or blockade; but where the goods, as in this case, were withdrawn from the bonded warehouse to avoid the payment of the revenue tax to which the same were subject, and were exported with the intent to transport the same back to a domestic port as the means of defrauding the revenue, such a theory cannot be adopted, especially if it appears, as assumed in the instruction given to the jury, that the goods were actually exported, under documents regular in form, out of the jurisdiction of the United States, before the vessel put about, and before the goods were brought back and landed in the domestic port. Such a rule cannot be sanctioned, as it would afford absolute protection to the worst sort of smuggling, and would open the door to innumerable frauds. Fraud is directly imputed in the declaration and the evidence introduced by the plaintiffs warranted the jury in finding that the charge of fraud was fully proved; and in that view of the facts the court is of the opinion that the first and sixth errors assigned must be overruled. 5 Stat. 752, § 9. Application for

leave to amend is in general addressed to the discretion of the court, and consequently the ruling of the court is not subject to exceptions or to a writ of error, and the court is of the opinion that the ruling in that respect, in this case, falls within the general rule, which disposes of the second error assigned. Exception was also taken to the admissibility of the documents from the custom-house to prove the withdrawal of the goods from the bonded warehouse, and their exportation in the Adele, as alleged in the declaration; but it is so manifest that the evidence offered was prima facie sufficient to support the allegations of the declaration, that it does not seem necessary to enter into much discussion upon the subject. Transportation bonds are required for the benefit of the government, nor can the defendant be heard to deny that the goods were regularly exported, even in a case where none such was given, if no other error is shown in the proceeding. Belcherral v. Linn, 24 How. [65 U. S.] 517. Such a bond ought to be required in such a case; but if it was omitted, it would not justify the shipper in violating other provisions of the revenue laws. Authenticated copies of the manifest of the owner, and of the outward foreign manifest, were also admitted in evidence; and the court is of the opinion that those documents were properly admitted, which is all that need be said in respect to the fourth error assigned.

Part of the whiskey was seized and condemned, under the laws of the United States, as goods unlawfully imported on a certain ship or vessel, without having a manifest on board, and the bill of exceptions shows that the defendant offered the record of that proceeding in evidence, as an estoppel to the right of the plaintiff to recover in this case; but the district court instructed the jury that the record was of no effect as an estoppel. Attempt is scarcely made to question the correctness of that ruling, and it is so obviously free from error that it will be sufficient to say that the fifth error assigned must also be overruled. Much discussion of the question of limitation is unnecessary, as it does not appear to be controverted that the original action was commenced in season to avoid the bar, even if the court should sustain the construction of the acts of congress in that regard, which is assumed by the defendant. Nothing need be said in reply to the defence that the action is barred by the state statute, as it is too clear for argument that a state statute cannot have the effect to bar a right of action secured to the United States by an act of congress. Suppose the original action was commenced in season to avoid the bar, still it is insisted by the defendant that the bar took effect before the new counts were filed, and he insists that those new counts introduce new causes of action, which, having been barred at the time the counts were filed, cannot be regarded as any part of the record. Even if that rule be conceded, it would not benefit the defendant, as the court is clearly of the opinion that the counts filed under the leave to amend do not introduce new causes of action, and consequently that the rule assumed by the defendant, even if it be correct, which is not admitted, will not entitle the defendant to a new trial. Both of the new counts were such as the court, in its discretion, might allow to be filed as amendments, and, being such, the ruling of the court, in allowing the same, is not the subject of error. Three years next after the penalty or forfeiture was incurred is the limitation originally prescribed by the act of congress. 1 Stat. 696, § 89. By the act of March 26, 1804, it is provided that any person or persons guilty of any crime arising under the revenue laws of the United States, or incurring any fine or forfeiture by breaches of said laws, may be prosecuted, tried, and punished, provided the indictment or information be found at any time within five years after committing the offence, or incurring the fine or forfeiture, any law or provision to the contrary notwithstanding. 2 Stat. 200, § 3. Beyond all doubt the effect of that provision was to repeal the prior limitation, and to extend the right of prosecuting the offender to five years. Exactly the same limitation is fixed by the act of February 28, 1839, provided that the person of the offender, or the property liable for the penalty or forfeiture, shall, within the same period, be found within the United States, so that process may be instituted and served. 5 Stat. 322, § 4. All these several limitations, except that prescribed by the act of Feb. 28, 1839, are expressly repealed by section 14 of the act of March 3, 1863; and it is clear that the repealing act does not enact any substitute provision in their place. 12 Stat. 741, § 13. No such proviso as that found in the act of 1839 is contained in either of the prior acts, and it may well be that congress intended to repeal the prior limitations and leave the one contained in the act of 1839 in full force, as the latter limitations would afford a remedy if the accused or the guilty property was out of the jurisdiction of the court during the whole period of the limitation. Express repeal of the act of 1839 is not pretended, nor is the implication in that regard so strong as to justify that conclusion. Wood v. U. S. 16 Pet. [41 U. S.] 342; U. S. v. Walker, 22 How. [63 U. S.] 311. Viewed in any light it is clear that the defence set up in the brief statement that the cause of action is barred by the statute of limitations of the United States is not sustained. U. S. v. Shorey [Case No. 16,282]. Successful denial of the following propositions cannot be made: 1. That the spirits in question were subject to an internal revenue tax. 2. That the spirits were deposited in a bonded warehouse without the payment of the internal revenue tax to

which they were subject. 3. That the spirits were withdrawn from the bonded warehouse for exportation and without the payment of such tax. 4. That the spirits were exported from the port of Boston for the purpose of fraudulently relanding the same in the United States, as the means of defrauding the public revenue. 5. That the spirits were not only exported from the port of Boston, but were actually transported out of the United States before the schooner, in which the casks containing the spirits were, actually put back for the purpose of relanding the same, as charged in the declaration. Evidence tending to prove these facts was certainly introduced by the United States, and it must be assumed, in considering the errors assigned, that all these facts have been found by the jury, and if so, it follows, in the judgment of the court, that there is no error in the record. Judgment affirmed.