UNITED STATES v. 10,000 COPIES NEW YORK NIGHTS et al.

District Court, S. D. New York.
March 21, 1935.

Martin Conboy, U. S. Atty., of New York City (Malcolm A. Crusius, of New York City, of counsel), for libelant.

Mintzer & Todarelli, of New York City, for claimant.

HULBERT, District Judge.

David Solomon, claimant, moves for an order dismissing a libel filed by the United States Attorney pursuant to section 305 of the Tariff Act of 1930 (section 1305, title 19 USCA), which, so far as material, reads as follows:

"1305. (a) All persons are prohibited from importing into the United States from any foreign country * * * any obscene book, pamphlet, paper, writing, advertisement, circular, print, picture, drawing, or other representation, figure, or image on or of paper or other material. * * *

"Upon the appearance of any such book or matter at any customs office, the same shall be seized and held by the collector to await the judgment of the district court as hereinafter provided; and no protest shall be taken to the United States Customs Court from the decision of the collector. Upon the seizure of such book or matter the collector shall transmit information thereof to the district attorney of the district in which is situated the office at which such seizure has taken place, who shall institute proceedings in the district court for the forfeiture, confiscation, and destruction of the book or matter seized. Upon the adjudication that such book or matter thus seized is of the character the entry of which is by this section prohibited, it shall be ordered destroyed and shall be destroyed. Upon adjudication that such book or matter thus seized is not of the character the entry of which is by this section prohibited, it shall not be excluded from entry under the provisions of this section.

"In any such proceeding any party in interest may upon demand have the facts at issue determined by a jury and any party may have an appeal or the right of review as in the case of ordinary actions or suits."

It is alleged in the libel that on or about the 17th day of August, 1934, the Collector of Customs of the Port and Collection District of New York did seize on land in the Southern District of New York and within the jurisdiction of this court the following magazines, 10,000 copies New York Nights; 5,000 copies French Night Life; 4,400 copies Gay Parisienne; 3,300 copies Spicy Stories; 2,600 copies La Paree; 1,350 copies Paris Gayety; 800 copies Pep; 800 copies Snappy; 600 copies Paris Nights, which arrived in the United States from England on June 18, 1934, and were entered at the port of New York on June 19, 1934, under free entry number 368140 by the Universal Car Loading & Distributing Company for the account of United States Magazine Bazaar Export Company. No objection to the merits of the claim of the libelant is made on this motion, but claimant contends "as American goods returned" the magazines were not imports, and, therefore, section 305 of the Tariff Act of 1930 has no application.

■■■ The moving affidavit alleges that the magazines in question were shipped to Liverpool by the claimant in two lots; one aboard the S. S. Scythia sailing from New York March 30, 1934, and the other aboard the S. S. Antonia, which sailed April 13, 1934. On arrival at the port of Liverpool, this merchandise was presumptively entered and examined by the British customs authorities and seized as indecent, but seizure was waived conditioned upon the immediate return of the merchandise to port of shipment. It is contended by the movant that the goods in question never entered England.

Section 1201 of title 19 USCA (Tariff Act 1930, § 201, par. 1615) provides:

"Free list. On and after June 18, 1930, * * * the articles mentioned in the following paragraphs, when imported into the United States * * * shall be exempt from duty. * * *

"Par. 1615. Articles the growth, produce, or manufacture of the United States, when returned after having been exported, without having been advanced in value or improved in condition by any process of manufacture or other means if imported by or for the account of the person who exported them from the United States. * * *"

Upon the return of the merchandise to New York an import entry was necessary to obtain a customs examination and secure free entry. Photostatic copies of the papers on such application have been submitted. Contained therein is an affidavit by Harold Walter Thompson of Stewart, Esplen & Greenhough, Limited, made before the vice consul of the United States at Liverpool on June 8, 1934, to an invoice of returned American goods and declaration of

foreign exporter that the reason for return of the magazines in question was "goods not accepted by consignees."

According to an affidavit made by T. G. Lisa, attorney of Universal Car Loading & Distributing Company, Inc., for free entry of the magazines in question, they were shipped from the United States by United States Magazine Bazaar Export Company of Yonkers, N. Y., to Stewart, Esplen & Greenhough, Limited, Liverpool, England.

The seizure at Liverpool was made under section 42 of the British Customs Consolidation Act of 1876 (39 & 40 Vict. chap. 36, Chitty's Statutes, vol. III, p. 787). Section 42 thereof reads as follows:

"The goods enumerated and described in the following table of prohibitions and restrictions inwards are hereby prohibited to be imported or brought into the United Kingdom, save as thereby excepted, and if any goods so enumerated and described shall be imported or brought into the United Kingdom contrary to the prohibitions or restrictions therein, such goods shall be forfeited, and may be destroyed or otherwise disposed of as the commissioners of customs may direct.

"A Table of Prohibitions and Restrictions Inwards.

"Goods prohibited to be imported. * * Indecent or obscene prints, paintings, photographs, books, cards, lithographic or other engravings, or any other indecent or obscene articles."

Section 41 reads as follows: "If upon the first levying or repealing of any duty, or the first permitting or prohibiting any importation, or at any other time, or for any of the purposes of the customs acts, it shall become necessary to determine the precise time at which an importation of any goods shall be deemed to have had effect, such time shall be deemed to be the time at which the ship importing such goods actually came within the limits of the port at which such ship shall in due course be reported and such goods be discharged. * * *"

The British Finance Act of 1901, 1 Edward VII, chapter 7, Section 7 (Chitty's Statutes, vol. III, p. 875), reads, in part, as follows: "(2) As respects the first levying or repealing of any duty or customs (including any duty imposed by this Act), the time at which the importation shall be deemed to have had effect shall be the time at which entry of the goods under the Customs Act is delivered instead of the time mentioned in section forty-two of the Customs Consolidation Act; 1876."

Therefore, there was an importation into Great Britain, and, either for consumption or other disposition, entry had to be made before the merchandise was or could have been examined by the British customs. At all events, that the goods were examined is conceded, as is also the fact that the goods were lawfully seized as indecent.

Counsel for the government cited McGlinchy v. United States, 4 Cliff. 312; Fed. Cas. No. 8,803. That case involved a statute requiring an importation. In that case 98 barrels of liquor were withdrawn from a warehouse to be shipped to St. Pierre, Miquelon, Canada, but the ship, pursuant to a preconceived plan, landed in Maine, and the defendant subsequently bought some of the liquor with knowledge of what had occurred. He unsuccessfully contended that as the ship had never entered a foreign port there had not been any importation.

In the case at bar, the Scythia and Antonia entered the port of Liverpool and the cargo in question was discharged therefrom and landed on the dock.

The movant relies upon the analogy in Treasury Decision 30,305. American horses were shipped to Canada. There was an entry, an examination (quite extended because of the t. b. test), and then a rejection and return of the horses to the United States. The similarity of the case at bar is an entry, an examination (quite extended, since it is the subject-matter that must be obscene and not just the title or appearance), and then the seizure, conditional release, and return. In the cited case, the importation of the horses was not in itself prohibited, but in the case at bar the goods are by the laws of the United Kingdom and excludable here if, after a trial by the court, with or without a jury, there is a determination that such magazines thus seized are of the character the entry of which is by said section 305 prohibited. Moreover, the Treasury Department expressly permitted the return of the horses without formal entry therefor being made for the reason that it was unlawful for cattle which had reacted to the tuberculin test or horses which had reacted to the Mallein test to be shipped from one state to another, and that such animals could therefore be returned only to the border states from which they were shipped to Canada, whether originat-

ing in that state or not, and that it would be the duty of the Inspector of the Bureau of Animal Industry at the port at which such animals were returned to notify the state veterinarian of their presence in order that the same might be disposed of in accordance with the laws of such state. Hence the Treasury Department expressly authorized the horses returned as a nonimportation. There is a substantial distinction in the application of Treasury Decision 30,305 to the facts in the instant case. The movant did not seek a ruling from the Treasury Department, but made a formal entry in order to secure the benefits provided for in paragraph 1615 of section 1201, supra.

In my opinion, the entry of this merchandise through the Custom House under the circumstances of this case justifies the filing of a libel under section 305 of the Tariff Act of 1930, and the motion to dismiss is denied.