UNITED STATES of America, Plaintiff,

v.

VARIOUS ARTICLES OF OBSCENE MERCHANDISE, SCHEDULE NO. 2098, Defendant.

No. 81 Civ. 4649–CSH.

United States District Court, S. D. New York.

Sept. 18, 1981.

Stuart M. Bernstein, Asst. U. S. Atty., New York City, for the government.

Major Anthony Dowd, pro se.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

The United States commenced this action pursuant to 19 U.S.C. § 1305(a) for the forfeiture and condemnation of various articles of allegedly obscene merchandise. The items in question, seized by authorized agents of the United States Customs Service at the time of the items' attempted importation into the United States at the port of New York, are listed in the schedule appended to this opinion as Appendix A. A warrant of arrest, notices of the pendency of the action, and notices of trial were duly sent to the several addressees. All procedural requirements have been complied with. One claimant appeared and gave testimony. He is Major Anthony Dowd, United States Air Force, the addressee of the twelve video cassettes which comprise seizure no. 06977/011 in the attached schedule.

The items listed in the schedule were seized, and forfeiture is demanded, pursuant to 19 U.S.C. § 1305(a), which provides in relevant part:

"All persons are prohibited from importing into the United States from any foreign country ... any obscene book, pamphlet, paper, writing, advertisement, circular, print, picture, drawing, or other representation, figure, or image on or of paper or other material ... or other article which is obscene or immoral.... No such articles whether imported separately or contained in packages with other goods entitled to entry, shall be admitted to entry; and all such articles and, unless it appears to the satisfaction of the appropriate customs officer that the obscene or other prohibited articles ... were inclosed therein without the knowledge or consent of the importer ..., the entire contents of the package ... shall be subject to seizure and forfeiture...."

While books, magazines and motion pictures enjoy First Amendment protection, if they contain material that is obscene in the constitutional sense they may be regulated by government, even to the extent of destruction, without offending constitutional guarantees. *United States v. Various Articles of Obscene Merchandise, Schedule No. 1769,* 600 F.2d 394, 402 (2d Cir. 1979), and cases cited. 19 U.S.C. § 1305(a) may be constitutionally applied to obscene materials sought to be imported for commercial dissemination, *United States v. Thirty-Seven (37) Photographs,* 402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971), and to such materials intended only for the importer's private, personal use and possession, *United States v. 12 200-Ft. Reels of Super 8MM. Film,* 413 U.S. 123, 93 S.Ct. 2665, 37 L.Ed.2d 500 (1973).

In *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), the Supreme Court articulated the guidelines by which state authorities may constitutionally proscribe obscene materials. The *Miller* definitions also control proceedings under § 1305(a). *Schedule No. 1769, supra,* at 401–02. *Miller* states:

"The basic guidelines for the trier of fact must be: (a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest, *Kois v. Wisconsin, supra,* at 230, quoting *Roth v. United States, supra,* at 489; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct...; and (c) whether the

work, taken as a whole, lacks serious literary, artistic, political, or scientific value." 413 U.S. at 24, 93 S.Ct. at 2615. *Miller* also gives examples of what may constitutionally be regarded as obscene:

"(a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated.

"(b) Patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals." *Id.* at 25.

■ The community standards to be applied are those pertaining at the port of entry, not those of the addressee's residence. *United States v. Various Articles of Obscene Merchandise, Schedule No. 1303,* 562 F.2d 185 (2d Cir. 1977). In the absence of a jury demand, the trial judge determines the "community standards" of the forum, considering as best he or she can "the entire community and not simply their own subjective reactions, or the reactions of a sensitive or of a callous minority," *Schedule No. 1303, supra,* at 192 (Mulligan, J., concurring and quoting *Smith v. United States,* 431 U.S. 291, 305, 97 S.Ct. 1756, 1766, 52 L.Ed.2d 324 (1977)). The judge must make that determination with respect to each seized item, whether the particular addressee has filed a formal claim or defaulted. *Schedule No. 1769, supra,* at 398–400.

Each of the items covered by the first ten seizure numbers (06977/001 through 010, listed on page 1 of Appendix A) is obscene within the definition of *Miller v. California, supra.* Their forfeiture and condemnation will be directed.

The twelve video cassettes listed under seizure no. 06977/011 (page 2 of Appendix A), claimed by Major Dowd, present a somewhat more complicated situation.

Major Dowd testified, and I find, that while he was stationed with the Air Force in Germany, he was president of the local video tape club. The video taping of movies was a popular hobby among United States forces stationed overseas, owing to the lack of American television. The club purchased a number of video tapes by mail from the United States, and made them available to club members. At the conclusion of his four-year tour of duty in Germany, Major Dowd taped approximately 500 movies, and mailed them to himself in New Jersey. The majority of these movies were, in the claimant's phrase, "family type films." They were not seized by the customs authorities. Only those cassettes referred to in the attached Appendix were seized.[1] Major Dowd further testified, and I also find, that he intended to use all the cassettes which he mailed from Germany, including those seized, for the relaxation of troops under his command.

■ The claimant, appearing *pro se,* contends that since the cassettes were made from movies which had been purchased in the United States, and were then mailed back to the United States from Germany, they do not fall within the statute. I reject that argument because, whatever their origin, the cassettes were seized at the time of their attempted importation into the United States from Germany. In *United States v. Eight Reels of Film,* 491 F.Supp. 129 (W.D. Tex.1978), *aff'd,* 620 F.2d 299 (5th Cir. 1978), the court condemned under § 1305(a) obscene films which had been purchased in the United States, taken to Mexico, and then seized when being brought back into the United States. Based on these facts, the court stated succinctly: "Claimant transported films which this court has deemed to be obscene across the border from Mexico to the United States. This conduct constitutes importation within the meaning of 19 U.S.C. § 1305." *Id.* at 132. I agree with that rationale, and am aware of no contrary authority.

---

1. Claimant makes no claim that the seizure was invalid; nor could he do so. *Schedule 1303, supra,* at 188, citing *United States v. Ramsey,* 431 U.S. 606, 97 S.Ct. 1972, 52 L.Ed.2d 617 (1977). The record does not reflect whether Major Dowd mailed the cassettes by APO, but even if he did, an APO mailing confers no immunity from customs inspection. *United States v. Milroy,* 538 F.2d 1033, 1036 (4th Cir.), *cert. denied,* 426 U.S. 924, 96 S.Ct. 2633, 49 L.Ed.2d 378 (1976).

In consequence, it became this Court's duty, to the extent necessary, to view the films contained on these cassettes, and determine whether or not they were obscene in the constitutional sense. Two factors served to reduce the number of films the Court was required to view. First, those films whose titles appear in brackets in Appendix A have been previously found to be obscene by judges of this Court, sufficiently recently to render the doctrine of *res adjudicata* applicable to them.[2] That is so, notwithstanding the fact that the addressees/claimants were different; these actions are by nature *in rem*, and it is the character of the film, not the identity of the addressee or claimant, which is significant.

Secondly, those movies whose titles are underlined were determined to be admissible, as non-obscene and non-violative of § 1305(a), by the customs agents themselves.[3]

Notwithstanding that favorable agency action, the Government argued at trial that each cassette should be viewed as a single work, so that, taking the work "as a whole" as commanded by *Miller, supra*, the inadmissible films might, by their number and character, overwhelm and condemn the admissible portions of the cassette. It is said, in support of that theory, that the customs authorities do not have equipment which is able to separate the wheat from the chaff.

I cannot accept that contention. Each film is a separate work, delineated (in most instances at least) by titles, captions, and varying degrees of plot and characterization. Whatever the present technological abilities of the customs authorities may

be, it is clear that technology exists to separate these cassettes into separate films, just as, in the first instance, several separate films were placed together on a single video cassette. This is, in short, an omelette whose eggs are susceptible of unscrambling. In view of the First Amendment implications, each separate egg is entitled to its own independent evaluation.

I have therefore, with the exceptions noted above, considered each of the component films on each cassette "as a whole." Having done so, I find that each of the films I examined is obscene under *Miller v. California, supra*. While these films differ somewhat in degree, each of them has as its *raison d'etre* the depiction of explicit sexual acts, of the sort condemned in *Miller* and its progeny. The inclusion of sexually explicit scenes does not, in and of itself, condemn a film as obscene; where the sexual scene is subordinate and non-prurient, the film is protected by the First Amendment. *United States v. A Motion Picture Film Entitled "I Am Curious-Yellow,"* 404 F.2d 196, 199 (2d Cir. 1968). But a claimed "redeeming social value" will not preserve a film from a charge of obscenity "if the sexual episodes were simply lugged in and bore no relationship whatever" to a non-offensive theme. *Id.* at 201. Nor will non-obscene material save the day if it may fairly be said that the work, viewed as a whole, "was a mere vehicle for the publication" of obscene material. *Kois v. Wisconsin*, 408 U.S. 229, 231, 92 S.Ct. 2245, 2246, 33 L.Ed.2d 312 (1972); see also *Penthouse International, Ltd. v. McAuliffe*, 610 F.2d 1353, 1371–73 (5th Cir. 1980). Judged by these authorities, all the films which this Court reviewed, whose ti-

---

2. The titles of the films previously held obscene, and the names of the cases in which such holdings were made are as follows: THE AUTOBIOGRAPHY OF A FLEA and BEHIND THE GREEN DOOR, *United States v. Various Articles of Obscene Merchandise, Schedule No. 1969*, 80 Civ. 1569 (CLB), May 18, 1980; A DIRTY WESTERN and CANDY STRIPERS, *United States v. Various Articles of Obscene Merchandise, Schedule No. 2008*, 80 Civ. 4335 (CLB), September 29, 1980; CANDY LIPS, SUMMER OF LAURA, LITTLE GIRL BLUE, EXPENSIVE TASTE and MEATBALL, *United States v. Various Articles of Obscene Merchan-*

dise, Schedule No. 2062, 80 Civ. 6857 (GLG), April 1, 1981; ERUPTION, *United States v. A Videotape Entitled "Eruption", Schedule No. 2091, Item No. 9*, 81 Civ. 2152 (CSH), September 3, 1981.

3. The films found to be admissible by customs are as follows: FLESH GORDON, CHEECH AND CHONG, THE ITALIAN STALLION, THE STORY OF O, REDD FOXX ON LOCATION, ROBIN WILLIAMS ON LOCATION, TOM AND TINE, FAMILY FEATURE, ALICE IN WONDERLAND and one short subject with no title.

tles appear in the margin,[4] must be condemned as obscene.

■ In these circumstances, the claimant of these video cassettes, Major Dowd, is entitled to separate the admissible from the non-admissible films and preserve the former, if he wishes to do so. Since the joinder of obscene and admissible films on a single cassette took place on the initiative of the claimant, the claimant must bear the expense of the separation, which must also be accomplished in such a manner as to satisfy the Government that only those films which are admissible are being copied and preserved. If the claimant elects to proceed in this manner, I am confident that an appropriate method for accomplishing the separation can be agreed. The Court will make a further direction if required to do so.

The foregoing constitutes the Court's findings of fact and conclusions of law pursuant to Rule 52(a), F.R.Civ.P. The Government is directed to settle a judgment, in conformity with this opinion, upon ten (10) days' notice to the claimant.

## APPENDIX A

### CERTIFICATE OF CUSTODY OF SEIZED MERCHANDISE

UNITED STATES CUSTOMS SERVICE

OFFICE OF THE REGIONAL COMMISSIONER OF CUSTOMS

NEW YORK REGION

July 17, 1981

RE: Schedule No. 2098

I HEREBY CERTIFY THAT

THE ARTICLES COVERED BY SCHEDULE NUMBER 2098, 1981 SERIES

(SEIZURE NUMBERS 06977/001 THROUGH 06977/011)

have been seized under the laws of the United States relating to Customs within this Customs Region and have been placed in the custody of the Regional Commissioner of Customs, New York Region, in the United States Customhouse in this Customs Region and still remain therein.

(s) Joseph J. De Nardo

JOSEPH J. DE NARDO, Asst. Chief Imports Compliance Branch

| SEIZURE NO. | DATE OF SEIZURE | DATE REC'D IN U.S. CUSTOMS SERVICE | ADDRESSEE | MERCHANDISE |
|---|---|---|---|---|
| | | SCHEDULE NO. 2098 | 1981 SERIES | JULY 17, 1981 PAGE 1 |
| 06977/001 | 7–15–81 | 7–15–81 | M. Sgt. Douglas R. Bailey 16375 Bar X Road Colorado Springs, CO 80908 | 7 Magazines, GEILA #18, EXTAS #8, 10, SEX O'M #7, TEENAGER #5, SEXORAMA, SUCK #3, |

4. This Court finds the following films to be obscene: THE HEALTH SPA; DISCO LADY; CRY FOR CINDY; PIZZA GIRL; MARY, MARY!; FINISHING SCHOOL; DEVIL IN MISS JONES; SWEDISH EROTICA; DR. FEEL GOOD; 31 short subjects consisting of excerpts from the following films: THE UNTAMED, DEEP THROAT, DEVIL IN MISS JONES, THE DEFIANCE, REFLECTIONS, TEENAGE MADAM, DEVIL'S PLAYGROUND, THE OTHER SIDE OF JULIE, CHERRY TRUCKERS, CHINA LUST, FOR LOVE OF MONEY, THE POSSESSION, PINK LIPS, LIKE MOTHER–LIKE DAUGHTER, LACEY BODINE, SHIELA'S PAYOFF, ALL THE SENATOR'S GIRLS, BLACKMAIL FOR DADDY, AND THEN CAME EVE, THE BLONDE IN BLACK LACE, KOWLOON CONNECTION, HOUSE OF KRISTINA, NO TITLE, SUPER–ROD, BEDROOM ATHLETE, WHAT KIND OF GIRLS DO YOU THINK WE ARE, TAXI GIRLS, THE OPENING OF MISTY BEETHOVEN, HONEYSUCKLE DEVINE, JUKE JOINT, GUMS OF NOVOCAINE, 4 with no title, DEEP THROAT, SUPERSTAR, INSIDE JENNIFER WELLES, EXPLORING YOUNG GIRLS, AWOL, NEVER A TENDER MOMENT, HOT NAZIS, SOUTHERN BELLES, NEW YORK BABES, THE PONY GIRLS, SEVEN INTO SNOWY, POOL OF PLEASURES, THE WISH, DREAM GODDESS, THE ANNIVERSARY, SUZE'S HOT REELS, WOMEN IN UNIFORM, FLIP CHICKS, TEENAGE DEVIATE, JAIL BAIT, BARBARA BROADCAST, and DEBBIE DOES DALLAS.

| SCHEDULE NO. | 2098 | 1981 SERIES | JULY 17, 1981 | PAGE 1 |
|---|---|---|---|---|
| SEIZURE NO. | DATE OF SEIZURE | DATE REC'D IN U.S. CUSTOMS SERVICE | ADDRESSEE | MERCHANDISE |
| 06977/002 | 7–15–81 | 7–15–81 | Mrs. Delores Williams 1509 Bredell Ave. Richmond Heights, MO 63117 | 4 Magazines, HEISSE GIRLS UND SUPER–SCHWANSE, BLUE CLIMAX #10, LESBIAN FANTASY, COLOR CLIMAX #101, PLUS ILL. ADV. |
| 06977/003 | 7–15–81 | 7–15–81 | Hosin Bahjat 6015 Short St. M.W.C., OK 73110 | 1 MAGAZINE INDEX '81. |
| 06977/004 | 7–15–81 | 7–15–81 | Mr. H. Dantonio Jr. 1461 Shore Pkwy 6E Bklyn, NY 11214 | Illustrated Advertising |
| 06977/005 | 7–15–81 | 7–15–81 | Tim Gumminger 2724 Holly Kansas City, MO 64108 | Illustrated Advertising |
| 06977/006 | 7–15–81 | 7–15–81 | Mr. Max Kraft 101 Bayou Dr. Baytown, TX 77520 | Illustrated Advertising |
| 06977/007 | 7–15–81 | 7–15–81 | Mr. S. K. Seffens P.O. Box 102 West Point, NY 10996 | Illustrated Advertising |
| 06977/008 | 7–15–81 | 7–15–81 | Mr. Phil Teed 1744 Kilbourne Pl. N.W. Wash., D.C. 20010 | Illustrated Advertising |
| 06977/009 | 7–15–81 | 7–15–81 | Mr. Robert E. Wilbur P.O. Box 966 Pearl City, HI 96782 | Illustrated Advertising |
| 06977/010 | 7–16–81 | 7–15–81 | Inn on Castro 321 Castro St. San Francisco, CA 94414 | 1 Magazine, COQ #30. |

| SCHEDULE NO. | 2098 | 1981 SERIES | JULY 17, 1981 | PAGE 2 |
|---|---|---|---|---|
| SEIZURE NO. | DATE OF SEIZURE | DATE REC'D IN U.S. CUSTOMS SERVICE | ADDRESSEE | MERCHANDISE |
| 06977/011 | 7–16–81 | 7–10–81 | Maj. Anthony Dowd c/o Michael Koury 17 Caracas Ct. Toms River, NJ 08757 | 12 VHS ½ inch videotape cassettes as follows: |

| CASSETTE | CONTENTS |
|---|---|
| X–1 | THE HEALTH SPA, DISCO LADY, [A DIRTY WESTERN], 3 Short subjects (CRY FOR CINDY, PIZZA GIRL, MARY, MARY!) |
| X–2 | FINISHING SCHOOL, DEVIL IN MISS JONES, SWEDISH EROTICA, DR. FEEL GOOD, 31 Short subjects (THE UNTAMED, DEEP THROAT, DEVIL IN MISS JONES, THE DEFIANCE, REFLECTIONS, TEENAGE MADAM, DEVIL'S PLAYGROUND, THE OTHER SIDE OF JULIE, CHERRY TRUCKERS, CHINA LUST, FOR LOVE OF MONEY, THE POSSESSION, PINK LIPS, LIKE MOTHER–LIKE DAUGHTER, LACEY BODINE, SHIELA'S PAYOFF, ALL THE SENATOR'S GIRLS, BLACKMAIL FOR DADDY, AND THEN CAME EVE, THE BLONDE IN BLACK LACE, KOWLOON CONNECTION, HOUSE OF KRISTINA, [MEATBALL], [SUMMER OF LAURA], [EXPENSIVE TASTE], [CANDY LIPS], [LITTLE GIRLS BLUE], NO TITLE, SUPER ROD, BEDROOM ATHLETE, WHAT KIND OF GIRLS DO YOU THINK WE ARE.) |

| CASSETTE | CONTENTS |
|---|---|
| X–3 | [ERUPTION], TAXI GIRLS, also included, "FLESH GORDON," which is considered admissible. 000 to 357 |
| X–4 | THE OPENING OF MISTY BEETHOVEN, HONEYSUCKLE DEVINE, JUKE JOINT, GUMS OF NOVOCAINE, 4 with no title. |
| X–5 | DEEP THROAT, PIZZA GIRL, 2 Short subjects (SUPERSTAR, [CANDY STRIPERS].) Also included, "CHEECH and CHONG" and "THE ITALIAN STALLION," both considered admissible. 587–end 558–566 |
| X–6 | [THE AUTOBIOGRAPHY OF A FLEA], also included, "THE STORY OF O," which is considered admissible. 000 to 445 |
| X–7 | [BEHIND THE GREEN DOOR], INSIDE JENNIFER WELLES |
| X–9 | EXPLORING YOUNG GIRLS, THE FINISHING SCHOOL, AWOL. Also included, "REDD FOXX ON LOCATION," "ROBIN WILLIAMS ON LOCATION," "TOM AND TINE," and "FAMILY FEATURE," which are considered admissible. 000 to 268 |
| X–10 | NEVER A TENDER MOMENT, HOT NAZIS, SOUTHERN BELLES, NEW YORK BABES. Also included, "ALICE IN WONDERLAND" and one short subject with no title, which are considered admissible. 599–end 323–355 |
| X–11 | THE PONY GIRLS, SEVEN INTO SNOWY, POOL OF PLEASURES, THE WISH, DREAM GODDESS, THE ANNIVERSARY, SUZE'S HOT REELS |
| X–12 | WOMEN IN UNIFORM, FLIP CHICKS, TEENAGE DEVIATE, JAIL BAIT |
| X–13 | BARBARA BROADCAST, [CANDY STRIPERS], DEBBIE DOES DALLAS 5 short subjects ([MEATBALL], [SUMMER OF LAURA], [EXPENSIVE TASTE], [CANDY LIPS], [LITTLE GIRLS BLUE]) |