**UNITED STATES of America, Plaintiff,**

v.

**1903 OBSCENE MAGAZINES, CUS-TOMS SEIZURE NUMBER 88–0901–00001, Defendant.**

**UNITED STATES of America, Plaintiff,**

v.

**800 MAGAZINES, SEIZURE NUMBER PX 88/56, Defendant.**

**Nos. Civ–87–1304C, Civ–88–120C.**

United States District Court,
W.D. New York.

June 20, 1989.

Dennis C. Vacco, U.S. Atty. (Martin J. Littlefield, Asst. U.S. Atty., of counsel), Buffalo, N.Y., for plaintiff.

Lipsitz, Green, Fahringer, Roll, Schuller & James (Paul J. Cambria, and Fern S. Adelstein, Joseph Latona, of counsel), Buffalo, N.Y., for defendant.

## BACKGROUND

CURTIN, District Judge.

Currently pending before the court are two motions for summary judgment by claimant Trans World News, Inc. The claimant is the distributor of the magazines at issue in these two cases, and is challenging the legality of their seizure by United States Customs officials at the United States–Canada border.

## FACTS

The relevant facts can be summarized briefly. In July, September, and October of 1987, a total of three shipments of magazines destined for Toronto were dispatched by truck from Cleveland, Ohio. After the magazines were brought into Canada, they were examined by Canadian Customs officials who refused to allow some of them to enter the country. These magazines were subsequently brought back to the United States, where U.S. Customs officials, after determining that they were obscene, seized the 2,703 magazines at issue while they were being held at warehouses maintained by the Customs Service. It appears that 1,903 of the magazines were seized on or about September

30, 1987, at the Lewiston Warehouse in Lewiston, New York, and that the remaining 800 were seized on or about January 29, 1988, at the Peace Bridge Warehouse in Buffalo, New York.

## DISCUSSION

The Tariff Act of 1930 ("Act") provides in relevant part:

> All persons are prohibited from importing into the United States from any foreign country ... any obscene book, pamphlet, paper, writing, advertisement, circular, print, picture, drawing, or other representation, figure, or image on or of paper or other material, or any cast, instrument, or other article which is obscene or immoral ... No such articles whether imported separately or contained in packages with other goods entitled to entry, shall be admitted to entry....

19 U.S.C.A. § 1305(a) (Supp.1989). The claimant contends that the magazines at issue were not subject to seizure because they were not being "imported" within the meaning of the Act. The claimant argues that because the magazines never actually "entered" Canada, they were not being "exported" from Canada when the truck returned to the customs station on United States' soil. If the magazines were not being exported from Canada, the claimant reasons, they were not being imported into the United States when the truck returned. Item 9 at ¶¶ 9–18; Item 13 at ¶¶ 9–18.

In *United States v. Various Articles of Obscene Merchandise, Schedule No. 2127*, 705 F.2d 41 (2d Cir.1983), U.S. Customs officials seized a shipment of allegedly pornographic magazines in New York City. The claimant in that case argued that the magazines had not been imported within the meaning of the Act because they had been purchased in the United States, had been brought to Germany while the claimant pursued his studies, and had merely been shipped back to the United States. The United States Court of Appeals for the Second Circuit rejected his argument, holding that "[t]his is an *in rem* action and any obscene materials brought into this country, regardless of their point of origin, are subject to seizure under 19 U.S.C. § 1305(a)." *Id.* at 42 n. 2.

The Second Circuit cited two cases in support of its holding—*United States v. Various Articles of Obscene Merchandise, Schedule No. 2098*, 536 F.Supp. 50 (S.D.N.Y.1981), and *United States v. Eight Reels of Film*, 491 F.Supp. 129 (W.D.Tex.1978), aff'd, 620 F.2d 299 (5th Cir.1980). In *United States v. Various Articles of Obscene Merchandise, Schedule No. 2098*, a video club run by American servicemen in Germany purchased videotapes by mail from the United States. The claimant, an officer who was president of the club, taped hundreds of the movies, some of which were obscene, and mailed them to himself in New Jersey, but the films were seized in New York before they could be delivered. In *United States v. Eight Reels of Film*, obscene films were seized from the claimant's car as she attempted to enter the United States from Mexico. According to the claimant, she had purchased the films in Texas, had inadvertently left them in the car's trunk, and had never removed them from the car while she was in Mexico. In each case, the court considered and rejected the contention that the films were not covered by the Act because they originated in the United States. *See* 536 F.Supp. at 52; 491 F.Supp. at 131–32.

The parties have cited one other case as relevant to the issue at bar. In *United States v. 10,000 Copies New York Nights*, 10 F.Supp. 726 (S.D.N.Y.1935), a shipment of allegedly obscene magazines entered Great Britain, where it was inspected by British authorities who subsequently returned it to New York. The claimant argued that the Act did not cover the magazines because they were merely American goods that were being "returned," and, consequently, were not imports. The court, rejecting the claimant's argument, found that once the goods reached the United States it was proper to initiate libel proceedings pursuant to the Act. *Id.* at 727–29.

None of these cases addresses the precise issue presently before the court.

**472**

Here, the goods were transported from the United States across an international border, but their entry was denied by foreign customs officials.

Yet the claimant's reliance on the fact that the goods here had been denied entry by Canadian officials is misplaced. None of the cases discussed above turned on the fact that the goods had technically "entered" another country; rather, it appears that the dispositive consideration in each case was the fact that the merchandise in question had crossed the United States' border. For example, the claimant attempts to distinguish *United States v. 10,-000 Copies New York Nights* by pointing out that the goods in that case had been imported into Great Britain before being returned to the United States. Item 9 at ¶¶ 16–17; Item 13 at ¶ 16–17. But the court in that case noted that, under British law, "entry *had* to be made" before the merchandise could be examined by the British authorities. 10 F.Supp. at 728 (emphasis added). Indeed, the court referred to the goods as having been merely "presumptively entered" into Great Britain. *Id.* at 727. It is thus clear that the court considered importation to be of no great consequence to the question of statutory interpretation before it.

In short, contrary to the claimant's argument, the Act does not require that goods be exported from another country before they can be imported pursuant to the Act.

Accordingly, because the magazines at issue here had crossed the United States border, they were properly seized as imports under the Act upon their return. The claimant's motions for summary judgment, therefore, are denied.

So ordered.