**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**ONE REEL OF 35MM COLOR MOTION PICTURE FILM ENTITLED "SINDER-ELLA", SHERPIX, INC., Claimant-Appellant.**

No. 52, Docket 73–1171.

United States Court of Appeals,
Second Circuit.

Argued Oct. 31, 1973.

Decided Feb. 11, 1974.

Edmund C. Grainger, Jr., New York City (O'Brien, Raftery, Rosenbloom & Grainger, New York City, on the brief), for claimant-appellant.

Donald B. Nicholson, Atty., U. S. Dept. of Justice, Washington, D. C. (John L. Murphy, Chief, Government Regulations Section, Crim. Div., Dept. of Justice, Robert A. Morse, U. S. Atty., for the Eastern District of New York, Brooklyn, N. Y., and Carl I. Stewart, Asst. U. S. Atty., on the brief), for plaintiff-appellee.

Before MOORE, HAYS and FEINBERG, Circuit Judges.

MOORE, Circuit Judge:

A short color motion picture film entitled "Sinderella" was offered for entry into the United States, was screened for entry by Customs officials and was then seized by them as being in violation of 19 U.S.C. § 1305 which prohibits the importation of obscene material.[1] On June 6, 1972, the government filed a complaint *in rem* to have the film forfeited, confiscated and destroyed. Thereafter, the owner-claimant of the film, Sherpix, Inc., filed its claim and answer directed towards securing the release of the film. On November 3, 1972, the case came on for trial before Chief Judge Jacob Mishler without a jury and on December 29, 1972, he filed his decision directing the forfeiture of the film. On January 4, 1973, a judgment was entered ordering the film "forfeited and condemned pursuant to section 305 of the Tariff Act." From that judgment the claimant Sherpix, Inc., takes this appeal.

The government's case consisted solely of placing the film in evidence and exhibiting it to the Court. The claimant then introduced the testimony of three experts. Their respective qualifications, the subject matter of their testimony and their conclusions have been so well and succinctly set forth in the trial court's opinion, 369 F.Supp. 1082 (U.S. D.C.E.D.N.Y.1972) that our affirmance could rest upon that opinion were it not for the fact that on June 21, 1973 [2] the Supreme Court in Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419, in Paris Adult Theater I v. Slaton, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446, and companion cases [3] purported to vary somewhat previous standards set by that Court for the determination of so-called pornography cases by stating:

> The basic guidelines for the trier of fact must be: (a) whether "the average person, applying contemporary community standards" would

---

1. The statute in pertinent part is as follows: Tariff Act of 1930, Title 19, United States Code § 1305:

 § 1305 Immoral articles; prohibition of importation (a) all persons are prohibited from importing into the United States from any foreign country * * * any obscene book, pamphlet, paper, writing, advertisement, circular, print, picture, drawing or other representation, figure or image on or of paper or other material or any cast, instrument, or other article which is obscene or immoral * * *.

 There is no definition of "obscene" in the statute.

2. Kaplan v. California, 413 U.S. 115, 93 S.Ct. 2680, 37 L.Ed.2d 492; United States v. 12

200 ft. Reels of Film, 413 U.S. 123, 93 S.Ct. 2665, 37 L.Ed.2d 500, and United States v. Orito, 413 U.S. 139, 93 S.Ct. 2674, 37 L.Ed. 2d 513.

3. On June 25, 1973, three additional cases were decided: Heller v. New York, 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745 (remanded to State courts for reconsideration in light of *Miller* and *Paris Adult Theater I*); Roaden v. Kentucky, 413 U.S. 496, 93 S.Ct. 2796, 37 L.Ed.2d 757 (conviction of theatre manager for exhibiting obscene film, reversed and remanded); and Alexander v. Commonwealth of Virginia, 413 U.S. 836, 93 S.Ct. 2803, 37 L.Ed.2d 993 (reversed and remanded).

find that the work taken as a whole, appeals to the prurient interest . . . (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law, and (c) whether the work taken as a whole, lacks serious literary, artistic, political, or scientific value.

Miller, supra, 413 U.S. at 24, 93 S.Ct. at 2615.

At the time of the trial, neither trial court nor counsel had the benefit of Miller and related cases. Nor did the trial court when writing his opinion. Our task now must be to ascertain whether the Judge improperly decided any questions of law and/or fact in light of Miller and Paris Adult Theater I upon the proof before him.

The trial judge did not restrict the testimony which claimant proffered in any way including the opinions of the three "experts", and his opinion makes clear the basis for his decision. Therefore, it is unnecessary for us to ask for a rebriefing and reargument in light of Miller. The film has been exhibited to us. This exhibition plus the record are quite adequate for reviewing purposes.

▉ A judge trying a case without a jury must, of necessity, be "the trier of fact". It was for him to decide as a matter of fact whether the Miller "basic guidelines" had been met. A jury in this case would have been selected from members of communities in the Eastern District of New York, i. e., Brooklyn, Long Island and Staten Island. In theory they would be supposed to know how an "average person" would apply "contemporary community standards" to whether Sinderella appealed to their "prurient interest". The Judge was vested with this same power and burden. His task was to gauge the reaction of the community when, as and if it viewed the film which he saw. The community

could not extend beyond the ken of the jury and, in this case, the Judge. Thus the narrowing geographic standards of Miller have been met. In fact the Judge at the opening of the trial quite understandably inquired: "How am I to judge national standards?" Naturally he could not possibly do this. Even State standards or city-wide standards would have been too broad. In final analysis he, as a jury, had to appraise local contemporary community standards as he believed they might exist.

▉ Appellant's pre-Miller arguments that the government failed to introduce any evidence other than the film itself and that the importer consented to having the exhibition of the film limited to adults have both been rejected by the Supreme Court.

In Paris Adult Theater I v. Slaton, supra, 413 U.S. at 56, 93 S.Ct. at 2634, Chief Justice Burger, stated for the majority (5 to 4):

Nor was it error to fail to require "expert" affirmative evidence that the materials were obscene when the materials themselves were actually placed in evidence. * * * The films, obviously, are the best evidence of what they represent.

▉ As to the "Adults Only" argument, the opinion, 413 U.S. at 68, 93 S. Ct. at 2641 stated that "the proposition that conduct involving consenting adults only is always beyond State regulation, is a step we are unable to take." (footnotes omitted).

▉ More fundamental is appellant's point that "The film is not obscene as a matter of law and it points to other films which have narrowly escaped court condemnation." [4] Obscenity, however, cannot be judged on a comparative basis. If the test were, is this film worse than many which are being shown in this metropolitan area, the answer would be

---

4. United States v. Language of Love, 432 F. 2d 705 (2d Cir. 1970) ; United States v. "I Am Curious Yellow," 404 F.2d 196 (2d Cir. 1968) ; United States v. "491", 367 F.2d 889 (2d Cir. 1966).

negative. For some reason films quite obviously obscene are being allowed, permitted or tolerated by local law enforcement agencies in certain areas and theatres but the existence of these enclaves does not create a community standard.

In its various opinions over the last few years, the Supreme Court virtually confesses its inability to define obscenity in specific and objective terms. Probably every Judge would admit to this inability but in reaching a decision would rely upon Mr. Justice Stewart's qualification of his confession, namely, "But I know it when I see it." Jacobellis v. Ohio, 378 U.S. 184, 197, 84 S.Ct. 1676, 1683, 12 L.Ed.2d 793 (1963). Having seen the film, we can say that it consists of a "prurient, patently offensive depiction * * * of sexual conduct" which is definitely "hard-core" pornography. The Supreme Court, undoubtedly realizing the difficulties attendant to any objective standards for obscenity gave "a few plain examples" of possible definitions under (b) of its above-quoted guidelines, namely:

(a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated.

(b) Patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals.

*Miller, supra,* 413 U.S. at 25, 93 S.Ct. at 2615.

 *Sinderella,* departing substantially from the conduct of her namesake of the fairy tale, "Cinderella," clearly comes within these examples.

As for the "experts", the trial judge was entitled to disregard their testimony. Their chief themes were that a viewing public might find an element of humor in this animated cartoon and that films much worse are being exhibited. If there be humor in watching the instantaneous anatomical reaction of the Prince to the charms of Sinderella and straight way capitalizing thereon by having intercourse with her, it could at best only produce a brief community smirk. Every scene has a single purpose, sexual activity. The fact that the characters are only animated puppets does not save the film. As for other films, if they offend contemporary local community standards, possibly local indignation can arouse local prosecutorial action.

If the community chooses to adopt a "laissez-faire" policy, this should be their choice. Fortunately, we do not have to decide upon the permitted range of pornography which judging by the frescoes of the early dynasties of Egypt, the relics of Pompeii, the temples of India and the ancient prints of Japan has not been altogether unknown throughout the ages. Our problem is only does this film come within the ban of § 1305 and the *Miller* guidelines. It as no redeeming value whatsoever and should be banned. It may be true that in the field of pornography things "have gone about as fer as they can go" [5] but this does not justify adding another import to our fast accumulating collection.

Judgment affirmed.

FEINBERG, Circuit Judge (concurring):

I concur in the result.

5. *Oklahoma,* R. Rodgers and O. Hammerstein, III, ("Everything Is Up To Date In Kansas City").