UNITED STATES of America,
Plaintiff-Appellant,

v.

VARIOUS ARTICLES OF OBSCENE
MERCHANDISE, SCHEDULE NO.
2102, Defendants-Appellees.

No. 1044, Docket 82–6016.

United States Court of Appeals,
Second Circuit.

Argued April 19, 1982.

Decided May 10, 1982.

Janis P. Farrell, Asst. U. S. Atty., S. D. N. Y., New York City (John S. Martin, Jr., U. S. Atty., S. D. N. Y., Stuart M. Bern-stein, Peter C. Salerno, Asst. U. S. Attys., S. D. N. Y., New York City, of counsel), for the United States.

Before WATERMAN, FRIENDLY and MESKILL, Circuit Judges.

PER CURIAM:

The United States appeals from a judgment of the United States District Court for the Southern District of New York, Sweet, J., holding that various articles of merchandise were not obscene within the meaning of 19 U.S.C. § 1305(a) (1976 & Supp. IV 1980) and dismissing the government's complaint. For reasons that follow, we reverse and remand to the district court for further proceedings.

This action, commenced on August 26, 1981, sought forfeiture, condemnation and destruction of various allegedly obscene articles of merchandise seized by the United States Customs Service several days earlier. The clerk of the court issued a warrant for the arrest of the articles, identified in Schedule 2102, and the United States Marshal executed the warrant on September 2. The seven respective addressees were notified of the seizure, the pendency of the civil action, and the eventuality of a trial. Each was informed that the date, time, and place of trial would be mailed at a later time. Notice of the action was also published in the New York Law Journal on September 8, 1981.

The United States Attorney's office received two letters in response, one from a sender and another from an addressee. However, only the government attended the bench trial, which was held on October 14, 1981. The government's sole witness, a Customs employee, described the procedures followed in seizures under 19 U.S.C. § 1305(a), and identified Schedule 2102 as well as the individual articles in this case. At that point, the government presented the materials as evidence and rested.

Judge Sweet filed his opinion on November 4, 1981, and a judgment was entered on November 9 dismissing the complaint. Judge Sweet first observed that he was

obliged to determine whether the seized articles violated section 1305(a) even though no party had appeared to challenge the government. *United States v. Various Articles of Obscene Merchandise, Schedule No. 1769,* 600 F.2d 394, 398–400 (2d Cir. 1979). After several preliminary remarks, he reviewed the articles, finding:

> The twenty items, which were seized, portray, either in magazine or on video tape, nudity, sexual intercourse between consenting participants, apparently adults, as well as oral and anal sex, including explicit and detailed pictures of genitalia. These pictures are set forth with a story line and dialogue, and none of the items possess any serious literary, artistic, political, or scientific value. By their explicit portrayal of genitalia and ultimate sex acts, they are in my personal view, and I so find as a fact, unpleasant, uncouth, tawdry and undeniably pornographic. The sole purpose of the seized items is to provide pornography for the recipients.

Judge Sweet then turned to the "basic guidelines for the trier of fact" in determining obscenity, *Miller v. California,* 413 U.S. 15, 24, 93 S.Ct. 2607, 2614, 37 L.Ed.2d 419 (1973):

> (a) whether "the average person, applying contemporary community standards" would find that the work, taken as a whole, appeals to the prurient interest . . .; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.

Based on his findings of fact, Judge Sweet determined that "the 'substantive component' of the *Miller* test of obscenity [was] met." However, in applying contemporary community standards he stated:

> New York's prominence as champion of free expression is engrained in the mores of the community. The community's concern for freedom of speech, expression, and thought translates into a tolerance that is established by the facts found above and that is visible on virtually every street corner. The Supreme Court has stated that it "is neither realistic nor constitutionally sound to read the First Amendment as requiring that the people of Maine or Mississippi accept public depiction of conduct found tolerable in Las Vegas, or New York City." *Miller,* 413 U.S. at 32, 93 S.Ct. at 2619. The reverse is equally applicable. A cosmopolitan attitude concerning the portrayal of sex may be one factor, which accounts for differing attitudes, but an equal, if not stronger factor is the community's conclusion and obvious demonstration that free expression ought not to be compromised by government restrictions. *I conclude that explicit portrayal of ultimate sexual activity and exhibition of the genitals are tolerated within the standards of the community, even if patently offensive or distasteful, because the community finds government restrictions and censorship of an individual's right more offensive than frequent displays of sexual materials.*

(emphasis added).

## DISCUSSION

The government argues that Judge Sweet's holding that the relevant community would not tolerate governmental restrictions on obscenity is contrary to law and would all but nullify 19 U.S.C. § 1305 in the Southern District. We agree that community tolerance of section 1305 is irrelevant to the determination of obscenity. As we discussed in *United States v. Various Articles of Obscene Merchandise, Schedule No. 1769,* 600 F.2d at 406–07, once the "substantive component" of the *Miller* test is satisfied, the only remaining consideration is whether under contemporary community standards the portrayal of the materials under review "is or is not 'patently offensive.'" We held in that case that "the manner or place in which the materials themselves either are, or are intended to be, used and enjoyed . . . is simply not relevant to the determination of the materials' 'patent offensiveness.'" *Id.* at 407. Similarly,

the reaction of the community to the wisdom of section 1305 has no bearing on the materials' "patent offensiveness." Community standards must instead be applied by the trier of fact "to gauge the reaction of the community when, as and if it viewed the [materials]." *United States v. One Reel of 35mm Color Motion Picture Film Entitled "Sinderella"*, 491 F.2d 956, 958 (2d Cir. 1974).

The government urges us to order forfeiture without resorting to a remand. The government points to the detailed findings of fact by the district court and submits that "the defendant Articles depict sexual conduct in a manner which under the standards of even the most sophisticated and urbane of communities is patently offensive and in fact compellingly so." Brief for United States at 20. On the basis of the record as it stands, we decline to hold the articles "patently offensive" as a matter of law. In his opinion, Judge Sweet summarized the content of the twenty items comprising Schedule 2102 as a whole. While we would tend to agree that portrayals of some of the activity he described would be "patently offensive" under any standard, we have not viewed the articles in question and recognize that each of the articles may contain varying degrees of sexual conduct. Accordingly, we consider a remand proper to enable Judge Sweet to determine whether each of the articles listed in Schedule 2102 is in fact "patently offensive" under contemporary community standards.

Reversed and remanded for further proceedings not inconsistent with this opinion.