**UNITED STATES of America,
Appellant,**

v.

**VARIOUS ARTICLES OF OBSCENE
MERCHANDISE, SCHEDULE NO.
2127, Defendants-Appellees.**

**No. 843, Docket 82–6230.**

United States Court of Appeals,
Second Circuit.

Argued Feb. 17, 1983.

Decided April 6, 1983.

Sally Lord, Asst. U.S. Atty., S.D.N.Y., New York City (John S. Martin, Jr., U.S. Atty., Peter C. Salerno, Asst. U.S. Atty., S.D.N.Y., New York City, of counsel), for U.S.

Before VAN GRAAFEILAND and MESKILL, Circuit Judges, and TENNEY, District Judge.*

MESKILL, Circuit Judge:

In this *in rem* action, the United States of America appeals from the judgment of the

---

\* Honorable Charles H. Tenney, United States District Judge for the Southern District of New York, sitting by designation.

United States District Court for the Southern District of New York, Brieant, *J.*, holding that thirty-one magazines seized by the United States Customs Service were not "obscene" within the meaning of 19 U.S.C. § 1305(a) (1976 & Supp. IV 1980). The appellant contends that the district court applied an improper standard of review when considering whether the seized materials were legally obscene for purposes of section 1305(a). We agree with the government's position and therefore reverse and remand this matter to the district court for further proceedings consistent with this opinion.

## BACKGROUND

■ During April of 1982, United States Customs agents confiscated approximately eighty-six allegedly pornographic magazines during several routine inspections at various ports of entry in New York City. The seizure was accomplished pursuant to

19 U.S.C. § 1305(a), which authorizes customs agents to confiscate obscene materials imported into the United States.[1] The record shows that the magazines were mailed or shipped from Germany and therefore properly subject to seizure under the "importation" language in section 1305(a).[2]

Customs Service regulations provide that articles are not deemed legally "seized" until the Imports Compliance Branch of the Customs Service determines whether the confiscated materials are "obscene" within the meaning of 19 U.S.C. § 1305(a). *See* App. for Appellant at 11–13. The Imports Compliance Branch made the requisite finding on April 26, 1982, and thereafter referred this matter for prosecution to the United States Attorney's Office for the Southern District of New York.

The government filed its complaint on May 3, 1982, seeking a warrant for the arrest of the seized magazines and a judg-

---

1. Section 1305(a) provides in pertinent part:
   All persons are prohibited from importing into the United States from any foreign country ... any obscene book, pamphlet, paper, writing, advertisement, circular, print, picture, drawing, or other representation, figure, or image on or of paper or other material ... or other article which is obscene or immoral .... No such articles whether imported separately or contained in packages with other goods entitled to entry, shall be admitted to entry; and all such articles and, unless it appears to the satisfaction of the appropriate customs officer that the obscene or other prohibited articles ... were inclosed therein without the knowledge or consent of the importer ..., the entire contents of the package ... shall be subject to seizure and forfeiture.... [T]he Secretary of the Treasury may, in his discretion, admit the so-called classics or books of recognized and established literary or scientific merit, but may, in his discretion, admit such classics or books only when imported for noncommercial purposes.
   Upon the appearance of any such book or matter at any customs office, the same shall be seized and held by the appropriate customs officer to await the judgment of the district court as hereinafter provided .... Upon the seizure of such book or matter such customs officer shall transmit information thereof to the district attorney of the district in which is situated the office at which such seizure has taken place, who shall institute proceedings in the district court for the for-

feiture, confiscation, and destruction of the book or matter seized. Upon the adjudication that such book or matter thus seized is of the character the entry of which is by this section prohibited, it shall be ordered destroyed and shall be destroyed. Upon adjudication that such book or matter thus seized is not of the character the entry of which is by this section prohibited, it shall not be excluded from entry under the provisions of this section.
   19 U.S.C. § 1305(a) (1976 & Supp. IV 1980).

2. Mr. Manfred Tappe, the only party in this proceeding who claims ownership to the magazines, asserts that the seized materials were not "imported" for purposes of 19 U.S.C. § 1305(a) because he purchased them in the United States, brought them to Germany while pursuing studies and then shipped them back into the United States. Tappe maintains, in effect, that because these materials have "exited" this country, they cannot be considered as "imported" under 19 U.S.C. § 1305(a) when they re-enter the United States. We reject this interpretation as unsound. This is an *in rem* action and any obscene materials brought into this country, regardless of their point of origin, are subject to seizure under 19 U.S.C. § 1305(a). *See United States v. Various Articles of Obscene Merchandise, Schedule No. 2098*, 536 F.Supp. 50, 52 (S.D.N.Y.1981); *United States v. Eight Reels of Film*, 491 F.Supp. 129, 131–32 (W.D.Tex.1978), *aff'd*, 620 F.2d 299 (5th Cir.1980).

ment that the materials be forfeited, confiscated and destroyed pursuant to 19 U.S.C. § 1305(a). The addressees of the confiscated materials were notified by mail that a bench trial would be held on June 24, 1982 to adjudicate whether the magazines were obscene and thus subject to forfeiture under section 1305(a). Notice of the pendency of this action was published in the New York Law Journal on May 14, 1982.[3]

At trial, Judge Brieant determined that section 1305(a) review could be best accomplished by separating the magazines into two groups, Group A consisting of fifty-five magazines and Group B consisting of the remaining thirty-one publications.[4] With respect to Group A, the court applied the prevailing "community standards" test and found the fifty-five magazines to be "obscene" within the meaning of 19 U.S.C. § 1305(a). *See Miller v. California,* 413 U.S. 15, 30–34, 93 S.Ct. 2607, 2618–2620, 37 L.Ed.2d 419 (1973). There is no appeal from this ruling.

Judge Brieant departed from the standard mode of analysis when considering the Group B materials. The judge ruled that the "community standard" test should not be applied to these materials because:

> [I]t is relevant that they are published in the United States and sold locally right within this District. The Court is prepared to find that as to 31 of those articles, Mr. Tappe's position [*i.e.,* that they are not obscene] is well taken and I might say also, they all appear to be used merchandise. They are not new by any means and therefore apparently not being imported for channels of trade.
>
> The Court believes that because of their current sale within this District that the community standards would not apply to the 31 exhibits which the Court has noted on the schedule.

*See* App. for Appellant at 43. Based on these findings, the court concluded that the Group B materials were not obscene and thus not subject to forfeiture under 19 U.S.C. § 1305(a). The government appeals this decision.

## DISCUSSION

The federal courts have never been entirely comfortable when asked to determine whether a magazine, film or other material is legally obscene. *See Miller v. California,* 413 U.S. 15, 16, 23, 93 S.Ct. 2607, 2610, 2614, 37 L.Ed.2d 419 (1973); *Interstate Circuit, Inc. v. City of Dallas,* 390 U.S. 676, 704, 88 S.Ct. 1298, 1313, 20 L.Ed.2d 225 (1968) (Harlan, J., concurring and dissenting). This judicial reticence stems in part from the realization that cultural notions of morality and pornography are continually evolving and do not lend themselves to precise definition. Further complicating the analysis is a concern for First Amendment freedoms. There is an inevitable tension between the important interest in free expression and the equally compelling objective of shielding the citizenry, particularly children, from pornographic materials that have no redeeming social value. Given these often irreconcilable forces, it is not surprising that the Supreme Court has characterized the obscenity question as "intractable," *see Miller v. California,* 413 U.S. at 16, 93 S.Ct. at 2610 (quoting *Interstate Circuit, Inc. v. City of Dallas,* 390 U.S. at 704, 88 S.Ct. at 1313 (Harlan, J., concurring and dissenting)), and has confessed to the "somewhat tortured history of the Court's obscenity decisions." *Miller v. California,* 413 U.S. at 20, 93 S.Ct. at 2612.

To assist the lower courts in resolving questions of legal obscenity, the Supreme Court has adopted a three-tier standard of review:

> The basic guidelines for the trier of fact must be: (a) whether "the average

---

**3.** No addressee appeared at trial to contest the seizure. However, Mr. Manfred Tappe sent a letter to the court claiming that the magazines were his property and requesting that they be returned. Judge Brieant found Mr. Tappe to be a real party-in-interest for purposes of the confiscation proceedings.

**4.** The court did not denominate these groups as A and B. We adopt these terms solely for convenience.

person, applying contemporary community standards" would find that the work, taken as a whole, appeals to the prurient interest, *Kois v. Wisconsin, supra,* [408 U.S.] at 230, [92 S.Ct. 2245, 33 L.Ed.2d 312], quoting *Roth v. United States, supra* [354 U.S.] at 489, [77 S.Ct. 1304, 1 L.Ed.2d 1498]; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.

*Miller v. California,* 413 U.S. at 24, 93 S.Ct. at 2614. The *Miller* test has been consistently applied by the federal courts since 1973 to ensure uniformity and predictability in this very difficult area of the law. *See United States v. Various Articles of Obscene Merchandise, Schedule No. 1769,* 600 F.2d 394, 400–01 (2d Cir.1979); *One Reel of 35MM Color Motion Picture Film Entitled "Sinderella",* 491 F.2d 956, 957–59 (2d Cir. 1974). Although imperfect, it is nonetheless the standard by which we are bound.

■ Judge Brieant chose a more novel approach to the resolution of the obscenity question when reviewing the thirty-one magazines at issue here. The court took judicial notice that the Group B magazines were "used," were available for purchase in the local market, and were published in the United States. Citing these considerations, most notably the fact of current sale within the local market, Judge Brieant ruled that it was not necessary to evaluate the Group B magazines against the *Miller* "community standard." We disagree.

*Every* allegedly obscene publication, regardless of whether it is "used," available for sale locally, or published in the United States, must be reviewed under the *Miller* standards. *See generally United States v. Various Articles of Obscene Merchandise, Schedule No. 2102,* 678 F.2d 433, 434–35 (2d Cir.1982) (per curiam); *United States v.*

*One Reel of 35MM Color Motion Picture Film Entitled "Sinderella",* 491 F.2d 956, 959 (1974) ("For some reason films quite obviously obscene are being allowed, permitted or tolerated by local law enforcement agencies in certain areas and theatres but the existence of these enclaves does not create a community standard."). In fact, this Circuit has implicitly rejected the claim that "local availability" is a legally sufficient defense to charges of obscenity. *See United States v. Manarite,* 448 F.2d 583, 593 (2d Cir.), *cert. denied,* 404 U.S. 947, 92 S.Ct. 298, 30 L.Ed.2d 264 (1971) ("Mere availability of similar material by itself means nothing more than that other persons are engaged in similar activities.").

■ We emphasize once again that consistent application of a uniform obscenity standard is the most important vehicle for maintaining judicial integrity in this difficult area of the law. The judgment is reversed and this matter is remanded to the district court for proceedings consistent with this opinion.[5]

---

**5.** Ordinarily, rather than remanding this action we would be inclined to undertake *de novo* review of the disputed magazines to avoid further litigation. *See generally United States ex rel. Lasky v. LaVallee,* 472 F.2d 960, 963 (2d Cir.1973). However, at least two, and possibly three, of the Group B magazines are reported missing and since Judge Brieant has reviewed each publication, he is clearly in the better position to determine whether they are obscene.