**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**VARIOUS ARTICLES OF OBSCENE
MERCHANDISE, SCHEDULE NO.
2102, Defendant-Appellee.**

**No. 1064, Docket 82–6334.**

United States Court of Appeals,
Second Circuit.

Submitted March 16, 1983.

Decided May 18, 1983.

Janis P. Farrell, Asst. U.S. Atty., New York City (John S. Martin, Jr., U.S. Atty. for the Southern District of New York, Peter C. Salerno, Asst. U.S. Atty., New York City, of counsel), submitted a brief for plaintiff-appellant.

Before MANSFIELD, MESKILL and NEWMAN, Circuit Judges.

MANSFIELD, Circuit Judge:

The government appeals from a judgment of the Southern District of New York, entered by Judge Robert W. Sweet after a hearing,[1] upon his opinion holding that various "hard-core" pornographic articles of merchandise (video cassettes and magazines [2]) seized by the government were not

---

1. Although the addressees were given notice and chose not to appear, the district court was required to hold a hearing, *United States v. Various Articles of Obscene Merchandise, Schedule No. 1769*, 600 F.2d 394, 398–400 (2d Cir.1979), at which the articles were introduced through a customs agent.

2. A schedule (No. 2102) identified the articles as follows:

| Seizure No. | Merchandise |
| --- | --- |
| 06979/001 | 9 Magazines: Horny, Color Orgy #8, 12, Elektra, Sex Deluxe, Color Climax #75, Top Porno, Venus Studio, Wish #3. |
| 06979/002 | 3 Magazines: Anal Sex #37, Teenager #6, Lust #3. |
| 06979/003 | 2 Video Cassettes: Jack, The Night Before. |
| 06979/004 | 4 Magazines: Idol Sex #12, Show Boy #11, Joy Boy #19, 20. |
| 06979/005 | 4 Magazines: Chick #132, 144, Tuk #12, Smile 198. |
| 06979/006 | 4 Video Cassettes: |

(a) Insatiable, Star Virgin, Behind the Green Door and one short untitled subject considered to be admissible.

"patently offensive" under contemporary community standards and hence not "obscene" within the meaning of 19 U.S.C. § 1305(a) (1976 & Supp. V 1981) and dismissing the government's complaint under that statute for forfeiture of the merchandise.[3] 565 F.Supp. 7. An earlier opinion by the district court reaching the same result had been remanded because of use of an incorrect legal standard for determining obscenity. *United States v. Various Articles of Obscene Merchandise, Schedule No. 2102,* 678 F.2d 433 (2d Cir.1982) (per curiam). We affirm.

No purpose would be served by describing in detail the seized articles except to say that they unquestionably are examples of hard-core pornography, describing and depicting a wide range of scenes of explicit sex on the part of adults, singly and in groups, including detailed portrayals of genitalia, sexual intercourse, fellatio, and masturbation. The magazines and representative samples of the most pornographic portions of the challenged videotapes were exhibited to the district court and later to ourselves.

In his first dismissal of the complaint the trial judge relied in part on his view that the community standard included a community belief that the right to "free expression ought not to be compromised by government restrictions" such as 19 U.S.C. § 1305. We reversed on the ground that "community tolerance of section 1305 is irrelevant to the determination of obscenity."

On remand, Judge Sweet again found that the articles were not obscene and dismissed the complaint. Relying on a survey of reports described in his prior opinion indicating widespread community availability of and hence community acceptance of pornographic materials, the district judge found that under "contemporary community standards, the movie 'Deep Throat' and the remaining video cassettes and magazines in Schedule 2102, each of which is comparable to 'Deep Throat,' are not patently offensive under contemporary community standards."

In addition, the district court noted that the behaviorial psychologist, B.F. Skinner, had recently cited with approval the theologian Paul Tillich for his defense of pornography as "extending sexuality into old age." The remarks of Skinner and Tillich, the judge determined, served to modify the court's prior conclusion that the challenged materials lacked serious literary, artistic, political and scientific value.

## DISCUSSION

Although the constitutionality of 19 U.S.C. § 1305 has been upheld, *United States v. 12 200-ft. Reels of Film,* 413 U.S. 123, 93 S.Ct. 2665, 37 L.Ed.2d 500 (1973), determination of what material falls within the term "obscene" does not lend itself easily to the judicial process. Much of the difficulty stems from the vagueness of the

| Seizure No. | Merchandise |
|---|---|
| | (b) Deep Throat, The Opening of Misty Beethoven, Debbie Does Dallas, Joint Venture, Wide World of Spurts. |
| | (c) Honeysuckle Rose, Expensive Tastes, 4 short subjects (The Blond, "11," Taboo, High School Memories). |
| | (d) The Ecstasy Girls, Inside Desiree Cousteau, Female Athletes. |
| 06979/007 | 2 Video Cassettes: |
| | (a) The Autobiography of a Flea, Behind the Green Door, A Dirty Western. |
| | (b) Maraschino Cherry, Little Girl Blue, No Title and Flesh Gordon which was considered admissible. |

---

**3.** Title 19 U.S.C. § 1305(a) provides in relevant part:

"All persons are prohibited from importing into the United States from any foreign country ... any obscene book, pamphlet, paper, writing, advertisement, circular, print, picture, drawing, or other representation, figure, or image on or of paper or other material ... or other article which is obscene or immoral."

concepts involved, the wide variation in moral attitudes within a heterogeneous population, and the unsuitability of conventional procedures, which rest on "findings of fact" and "conclusions of law," to the task of determining obscenity. Faced with these hurdles the Supreme Court has set forth the standards for determining whether pornographic material is "obscene," as that term is used in § 1305, in *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973) and its progeny. *United States v. Various Articles of Obscene Merchandise, Schedule No. 2127,* 705 F.2d 41, 43 (2d Cir.1983).

■ Before a work can be adjudged obscene, the trier of fact must find that (a) "'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest;" (b) "the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law;" and (c) "the work, taken as a whole, lacks serious literary, artistic, political, or scientific value." *Miller, supra,* 413 U.S. at 24, 93 S.Ct. at 2614 (citations omitted). Sexually-oriented work is not obscene unless all three elements of the *Miller* test are satisfied. Thus a work, though a valueless piece appealing to the prurient interest, will not be deemed obscene unless it is patently offensive according to contemporary community standards, i.e., in the judgment of the "average person in the community, rather than the most prudish or the most tolerant," *Smith v. United States,* 431 U.S. 291, 304, 97 S.Ct. 1756, 1765, 52 L.Ed.2d 324 (1977). See *Jenkins v. Georgia,* 418 U.S. 153, 161, 94 S.Ct. 2750, 2755, 41 L.Ed.2d 642 (1974); *Miller v. California, supra,* 413 U.S. at 27, 93 S.Ct. at 2616; Lentz, *Comparison Evidence in Obscenity Trials,* 15 U.Mich.J.L.Ref. 41, 47–48 & n. 9 (1981).

■ A determination of patent offensiveness requires a two-step inquiry that focuses first on the substantive content of the materials to see whether they depict or describe "hard core" types of sexual conduct that the trier of fact could constitutionally label "patently offensive" according to contemporary community standards, i.e., whether it qualifies as possibly obscene. *Smith v. United States, supra,* 431 U.S. at 301, 97 S.Ct. at 1764. If not, that ends the inquiry. Once this threshold "substantive component" or condition is satisfied, the trier must then determine whether, as a matter of fact, the materials are patently offensive to the average person in the community. *United States v. Various Articles of Obscene Merchandise, Schedule No. 1769,* 600 F.2d 394, 406 (2d Cir.1979).

■ The government bears the burden of proving all three elements of obscenity to the satisfaction of the trier of fact, *United States v. 2,200 Paper Back Books,* 565 F.2d 566, 570 (9th Cir.1977), but it is not constitutionally required to introduce evidence of community standards. *Hamling v. United States,* 418 U.S. 87, 104, 94 S.Ct. 2887, 2900, 41 L.Ed.2d 590 (1974). The materials, if "hard core," may speak for themselves, *Paris Adult Theatre I v. Slaton,* 413 U.S. 49, 56 & n. 6, 93 S.Ct. 2628, 2634 & n. 6, 37 L.Ed.2d 446 (1973). While the materials provide the best evidence of their substantive content, they do not supply any information about the community standards by which they are to be judged. *United States v. 2,200 Paper Back Books, supra,* 565 F.2d at 570. The trier is free to decide that the government has failed to sustain its burden of proving that the materials, although unprotected by virtue of their "hard core" content, are patently offensive to the average member of the community. In order to make that determination he may utilize his own sense of the views of the hypothetical "average person in the community," a flexible concept that requires taking into account such variables as the characteristics of the community,[4] the differing attitudes within it,

---

4. Although the geographical bounds of the "community" as that term is used in *Miller* may not extend to our nation as a whole, *Hamling v. United States, supra,* 418 U.S. at 107, 94 S.Ct. at 2901; *Jenkins v. Georgia,* 418 U.S. 153, 157, 94 S.Ct. 2750, 2753, 41 L.Ed.2d 642 (1974), they need not be precisely defined. In this case Judge Sweet properly equated the district in which he sits with the "community." *Hamling v. United States, supra,* 418 U.S. at 104–06, 94

the extent to which persons reveal their true opinions, and the nature of the "hard core" material under attack. To arrive at a measure of community tolerance of pornographic material the trial judge may rely upon his own experience in the community and decide as best he can what most people seem to think about such materials. If, on the other hand, he has little or no knowledge of their views, he may turn to opinion proof and, if the government fails to offer such proof, he may be relegated to finding that it has failed to sustain its burden. See, e.g., *United States v. 2,200 Paper Back Books, supra,* 565 F.2d at 570.

■ The parties may introduce relevant evidence of the prevailing community standard. *Miller, supra,* 413 U.S. at 31 n. 12, 93 S.Ct. at 2619 n. 12; *Hamling v. United States, supra,* 418 U.S. at 106, 94 S.Ct. at 2901. But even if such evidence is adduced, the trier may nonetheless disregard it and rely exclusively on his own knowledge of the views of the average person in the community in making the required determination. *Smith v. United States, supra,* 431 U.S. at 301–02, 97 S.Ct. at 1763–62; *Hamling v. United States, supra,* 418 U.S. at 104, 94 S.Ct. at 2900; *United States v. One Reel of 35mm Color Motion Picture Film Entitled "Sinderella,"* 491 F.2d 956, 959 (2d Cir. 1974). Although appellate courts are required to exercise *de novo* review as to the preliminary substantive requirement that the material be "hard core" pornographic in nature, *Jenkins v. Georgia, supra,* 418 U.S. at 160–61, 94 S.Ct. at 2754–55, the trier's finding that the material is non-obscene is virtually shielded from appellate scrutiny, at least absent evidence that it is so clearly unreasonable as to amount to abuse of discretion. The principal reason for this posture on appeal is that under *Miller* the trier of fact is at liberty to identify and apply community standards as he sees them, unchecked by any definition of the relevant community (except that it may not extend to the entire nation) or by any more precise

benchmarks. To this must be added our tradition that it is for the trial judge or jury, not the appellate court, to find the facts, and the dubious assumption that the triers have their fingers on the pornographic pulse in the community, enabling them to determine whether specific material has crossed the line from being tolerated to being patently offensive.

These are indeed difficult concepts for classification as "fact-finding." Although the jury's experience in everyday life equips it to determine what the hypothetical "reasonable man" would do in a given circumstance, judges or jurors lacking experience in the field of pornography and the attitudes of others toward it (often deliberately not revealed) face a greater challenge in making the findings demanded by *Miller.* Note, *Community Standards, Class Actions, and Obscenity under* Miller v. California, 88 Harv.L.Rev. 1838, 1844 (1975).

Applying these principles here, Judge Sweet's findings that all the seized materials on Schedule 2102 satisfied the prurience element and the substantive constitutional "hard core" threshold test for application of the patent offensiveness standard are clearly correct. The controversy arises out of his perception of prevailing community standards.

The government, apparently relying on Judge Sweet's knowledge of community standards, offered no evidence on that element. It now argues that the district judge erred in taking explicit notice of the availability of the same and similar materials in the New York area. We disagree. It is true that the mere availability of similar materials in the Southern District of New York does not demonstrate that they are acceptable to the average member of the community. *Hamling v. United States, supra,* 418 U.S. at 125–26, 94 S.Ct. at 2911–12; *United States v. Various Articles of Obscene Merchandise, Schedule No. 2127, su-*

S.Ct. at 2900–01; *United States v. Various Articles of Obscene Merchandise, Schedule No. 1303,* 562 F.2d 185, 188–89 (2d Cir.1977) (ob-

scenity of imported material determined by place of entry), *cert. denied,* 436 U.S. 931, 98 S.Ct. 2831, 56 L.Ed.2d 776 (1978).

*pra,* at 44; *United States v. One Reel of 35mm Color Motion Picture Film Entitled "Sinderella,"* 491 F.2d 956, 958–59 (2d Cir. 1974); *United States v. Manarite,* 448 F.2d 583, 593 (2d Cir.), *cert. denied,* 404 U.S. 947, 92 S.Ct. 298, 30 L.Ed.2d 264 (1971). In *Manarite,* we held that evidence of "availability of similar materials is not by itself sufficiently probative of community standards to be admissible in the absence of proof that the material enjoys a reasonable degree of community acceptance." 448 F.2d at 593. However, where the availability and public viewing of the same or comparable materials in the New York area is widespread, as appears to be the case here (e.g., the motion picture "Deep Throat" was exhibited to paying patrons in numerous New York theatres), the trial judge was entitled to draw the inference therefrom that the challenged articles enjoy a "reasonable degree of community acceptance." *Id.*

■] Thus, while the existence of enclaves of tolerated obscenity does not by itself create a community standard, *United States v. One Reel of 35mm Color Motion Picture, supra,* 491 F.2d at 959, judicial notice of widespread community availability and patronage of such works may be accepted as circumstantial evidence of contemporary community standards. *United States v. 2,200 Paper Back Books, supra,* 565 F.2d at 571; *Keller v. State,* 606 S.W.2d 931, 933–34 (Tex.Cr.App.1980). At some point a work widely available must be considered inferentially acceptable. Lentz, *Comparison Evidence in Obscenity Trials, supra,* 15 U.Mich.J.L.Ref. at 67. The weight to be given to wide availability rests with the trier of fact. In the present case the government, which had an opportunity to do so, failed to offer evidence of community standards or to show that the materials were not as widely available as the district court found. "The community cannot, where liberty of speech and press are at issue, condemn that which it generally tolerates." *Smith v. California,* 361 U.S. 147, 171, 80 S.Ct. 215, 228, 4 L.Ed.2d 205 (1959)

(Harlan, J., concurring in part and dissenting in part).

■ We determine obscenity in accordance with the "present critical point in the compromise between candor and shame at which the community may have arrived here and now." *United States v. Kennerley,* 209 F. 119, 121 (S.D.N.Y.1913) (L. Hand, J.). Having reviewed a representative sample of these works and in the absence of contrary evidence of prevailing community standards, we cannot say that the trial court abused its discretion in finding that the articles on Schedule 2102 were not patently offensive under contemporary standards in the New York area.

Nor do we think that the district court's suggestion that the B.F. Skinner speech served to modify its prior conclusion that the materials lack "serious literary, artistic, political and scientific value" was reversible error. While the opinion that all pornography may have value cannot establish the value of *each* item on the Schedule, see *United States v. Various Articles of Obscene Merchandise, Schedule No. 2127, supra,* at 44, the value *vel non* of the challenged works is immaterial once the materials are determined not to be patently offensive.

The judgment of the district court is affirmed.

MESKILL, Circuit Judge, concurring in the result:

Judge Sweet described the articles identified in Schedule 2102 as portraying "nudity, sexual intercourse between consenting participants, apparently adults, as well as oral and anal sex, including explicit and detailed pictures of genitalia." *United States v. Various Articles of Obscene Merchandise, Schedule No. 2102,* 81 Civ. 5295, slip op. at 3 (S.D.N.Y. Nov. 3, 1981). He found the material "unpleasant, uncouth, tawdry and undeniably pornographic." *Id.* at 4. I agree. But, Judge Sweet concluded that the articles are not "obscene" within the meaning

of 19 U.S.C. § 1305(a) (1976 & Supp. V 1981) because they are "not patently offensive under contemporary community standards." *United States v. Various Articles of Obscene Merchandise, Schedule No. 2102,* 81 Civ. 5295, slip op. at 3 (S.D.N.Y. Sept. 29, 1982). I find this conclusion difficult to accept unless the community standards in New York are so low that nothing is obscene. Yet his conclusion is unassailable as a matter of law in the circumstances of this case.

The only issue here is whether the articles identified in Schedule 2102 are "patently offensive" under contemporary community standards, *Miller v. California,* 413 U.S. 15, 24, 93 S.Ct. 2607, 2614, 37 L.Ed.2d 419 (1973), the community in this case being the area encompassed by the Southern District of New York. 81 Civ. 5295, slip op. at 14 (S.D.N.Y. Nov. 3, 1981). On a prior appeal to this Court, a different panel from the one today, a panel of which I was a member, reversed Judge Sweet's finding of non-obscenity because he had relied upon impermissible indicia of community standards. *United States v. Various Articles of Obscene Merchandise, Schedule No. 2102,* 678 F.2d 433, 435 (2d Cir.1982). Although we had not at that time viewed the articles in question, we suggested in remanding the case "that portrayals of some of the activity [Judge Sweet] described would be 'patently offensive' under any standard." *Id.* at 435. Today, we affirm. In so doing, the majority accords uncommon deference to Judge Sweet's "finding that the material is non-obscene," characterizing it as "virtually shielded from appellate scrutiny, at least absent evidence that it is so clearly unreasonable as to amount to abuse of discretion." Unfortunately, our review is limited to a record devoid of evidence pertaining to community standards. Yet, I do not believe that our hands are tied nearly as tight as the majority thinks. While Judge Sweet surely brings a finely honed sense of community standards to the bench, we are not precluded from testing his assessment of how the average person in the Southern District of New York would react to the allegedly obscene articles.

The question is not whether the community approves of the government's confiscation of these articles; we held in the prior appeal that "the reaction of the community to the wisdom of section 1305 has no bearing on the materials' 'patent offensiveness.' " *Id.* The question is whether the average person in the community would find the articles patently offensive. New York City may be the most sophisticated and cosmopolitan community in the nation, but I cannot imagine its residents to be indifferent to what I witnessed in the screening room. If these articles are acceptable to and tolerated by the average member of the community, I wonder if any form of pornography can be lawfully seized pursuant to section 1305 in the Southern District of New York. Measured against the community standards with which I am familiar, these articles are obscene; they offend my sense of decency and insult the standards of the community that I know. However, I am not a resident of nor as well acquainted with New York City as is Judge Sweet, and I am not well versed in the varieties and types of pornography which circulate there. Consequently, I am ill equipped to question Judge Sweet's assessment. Moreover, the government failed to introduce any evidence pertaining to community standards to facilitate our review. Had this case originated in the District of Connecticut, in a community whose standards are familiar to me, I would not hesitate to reverse; but it did not. I reluctantly concur.